The cause stood over for consideration until this day, when the following opinion was delivered by his honour :
The Chancellor.
The great object of the bill is to convert the real estate held by two of the defendants, in trust, for the legal representatives of Philip P. Livingston deceased, and of whom the plaintiff is executor, into assets, for the payment of the debts still outstanding against that testator’s estate.
The bill does not state the amount of the outstanding debts, nor who the creditors are. It only avers that the assets already applied for the purpose, have proved “ utterly insufficient for the payment and discharge of the testator’s debts.” Here appears to be scarcely sufficient-ground upon which the court ought to be called upon to act. The plaintiff, however, wishes to make the trust estate chargeable with the debts, (whatever they may be,) to the exemption of the real estate in the island of Jamaica, which was devised exclusively to himself. It is contended, that the trust estate descended undevised to the *153 heirs at law, and is, therefore, to be first chargeable j and also, that it is included in the order of the court of pro-hates, directing the testator’s real estate to be sold for the payment of debts.
in marshalling f fa ft ©S° tate ’descended bethapp1!ed8 to debts,1^before unieSSd<de” v»e<^ specially
Equity win also ^Se/sseto‘ ofi’añd fo~ cfficriegateeSJ$"
i shall waive, for the present, any difficulty as to the want of explicitness and precision in the bill, and proceed to consider the question whether the plaintiff has any equitty to entitle him to charge the trust estate in exclusion of his own.
1. The general doctrine of the court in marshalling assets, is admitted to be, that the estate descended to the heir is to be charged with the debts before the estate devised; (unless it be devised specially for the payment of debts;) .for if the devisee was to be made liable, in the first instance, it would defeat the gift, and, consequently, the intention of the testator. This role was declared by Lord Talbot in Pitt v. Raymond, (cited in 2 Atk. 434.) and acted upon by Lord Hardwicke, in Galton v. Hancock, (3 Atk. 430.) and by the court, in numerous cases since. (Davies v. Topp, note to 2 Bro. 259. Wride v. Clark, note to 2 Bro. 261 Donne v. Lewis, 2 Bro. 257.) The order in which assets were to be applied is distinctly stated by Lord Thurlow in Dome v. Lewis. Equity will even marshall the real assets descended to the heir, in favour of, or for the relief of specific legatees, but it will not, for such a purpose, interfere with the lands devised, unless they were devised subject to the payment of debts. (Hanby v. Roberts, Amb. 128. Clifton v. Burt, 1 P. Wms. 678. 5th resolution in Haslewood v. Pope, 3 P. Wms. 322. Lord H. in Forester v. Leigh, Amb. 172.) I apprehend, however, that none of this doctrine on which the counsel for the plaintiff seemed to rely, has any application to the case. The trust estate in question did not descend undevised to the heirs at law, but it passed under the testator’s will, as part of his residuary estate out of the island of Jamaica.
The testator owned the property in question when- he *154 made his will, and devised a certain residuary estate (of which this formed a part) to his seven children, in unequal proportions. He, afterwards, with other devisees of the testator’s father, conveyed this property to certain persons, " in trust to pay the debts of his father, from whom he derived the estate, and then in trust for his father’s devisees and their representatives. In other words, he conveys his interest in his father’s estate, in trust, to pay his father’s debts, and when that purpose is effected, the remainder to be held in trust for himself. An act of the legislature was, afterwards, passed, to carry this trust more completely into execution, and the preamble to that bill states the prayer of the petition of the testator and others to have been, that the surplus, if any, should be conveyed by the trustees, to the several persons interested therein, according to their respective proportions. The idea is uniformly kept up that the remainder of the property so conveyed in trust, was to return, and to be held and enjoyed as before. The act itself declares, that the residue waá to go to the persons, and in the manner and proportions specified and expressed in the deed, in trust. The bill itself states, and the answers admit, that the trustees held the residuum of the estate belonging to the testator, in trust, for the testator or' Ms legal representatives.
This conveyance in trust was no revocation of the will, beyond the mere purpose of paying the debts, because there was no alteration of the estate beyond that purpose.
It was the clear and manifest intention of the conveyance and other acts in trust,- to appropriate the property in payment of debts, and to have the surplus restored to its former state and condition, without other or further alteration. The rules respecting these partial revocations, are deducible from a series of determinations of great judges in equity. The question of revocation has been much agitated, and laboriously discussed, but there is no one who has spoken with more clearness, or treated the *155 Subject with more ability, than the Master of the Rolls, in Harmood v. Oglander, (6 Vesey, 199.) He has reviewed all the cases, and given us the collected result of his uncommon diligence and learning.
a subsequent conveyance by a testator, in p™ent°r *0} r¿idueafor the l^tor’pers^ “ would have the conveyance, js not a revocation of SUch special purp°56”
It is a settled principle in equity, that if a conveyance . . y . . . , is only for a partial purpose of introducing a charge, ana does not aifect the interest of the testator, beyond that purpose, it is only a partial revocation of the will, and equity will hold the party a trustee, not for the heir, but for the devisees. A devise is not revoked in equity, by a mortgage in fee, or a conveyance in fee, for the payment of ° ’ . ' . debts. The mortgagee is a trustee for the devisee, and the devisor continues owner as before, subject to the mortgage. So, after a devise, if a conveyance be made in fee, in trust to sell and pay debts, and the surplus of the personal estate to the testator and his executors, and the surplus of the lands to him and his heirs, this is no revocation in equity, and so it has been determined. If after the debts are paid, the trustee conveys to the testator and his heirs, that is no revocation, and if the estate should descend to the heir, he would be only a trustee for the devisee. This has been so held by Lord Hardwicke and Lord Thurlow ; and the principle is settled. So, if the testator dies without taking back the legal estate, equity has only to decide to whom the beneficial interest belongs, and it holds the party a trustee for the devisee, and not for the heir, and directs a conveyance. When the testator, after making his will, conveys his estate in trust for the payment of debts, the estate is still, in contemplation of equity, in him substantially, and though the mode amounts to a revoca- ' tion at law, (for a court of law has nothing to do with the purpose,) yet, subject to the debts, he remains, in equity, master of the estate, and the will continues to operate upon his interest. If he calls for a conveyance of the legal estate, his heir is a trustee for the devisee; and if he does not, but dies in the mean time, his trustee holds for *156 the devisee, for his equitable interest still continued-(6 Vesey, 218—223.)
The Court of Probates where the personal estate is insufficient for the de^teome testate] cannot] of the executor tor sale of lands held m trust for the testator; his power untier the act is over the legal estate, or that of which the testator or intestate died seized.
The doctrine thus laid down by Lord Almnley, may also collected from a series of other decisions. (Hall v. Dench, 1 Vern. 329. Vernon v. Jones, 2 Vern, 241. Ogle v. Cook, reported in 3 Atk. 746. 2. Bro. 592. Jackson v. Parker, Amb. 687. and the general observations of Lord Hardwicke, in Parsons v. Freeman, 3 Atk. 748. and in Sparrow v. Hardcastle, 3 Atk. 805. Lord Rosslyn, in Bridges v. Dutchess of Chandos, 2 Vesey, jun. 428, 429.) In the prior case of Williams v. Owens, (2 Vesey, jun. 599, 600. Lord Alvanley had explained, in the same way, the principle, which he shows was evidently established by Lord Hardwicke, in Parsons v. Freeman, “ that wherever the estate is modified in a manner different from that in which it stood at the time of making the will, it is a revocation, but wherever the testator remains, after a conveyance for a mere particular purpose, as the payment of debts, seized of the same estate, and disposable by the same means, without any fresh modification, there is no revocation.”
2. As I have considered that the estate in question was property devised, not descended, one main ground of the bill has failed, unless the estate can be considered as bound by the order of the Court of Probates, and that it is proper for this court to lend its aid in carrying that order into effect.
The order of the Court of Probates was made on the 28th of April, 1795, and that Court was authorized, on the . , . . application of executors or administrators, to examine the account of the personal estate and debts of the testator or intestate, and if it should find the personal estate insufficient, and that the same had been applied toward payment the debts, the court was directed to order “ the reaj estate, whereof such testator intestate died seised 7 7 to be sold, &c. (Act of the 4th April, 1786, ch. 27. s. 6.)
*157 This was a special and newly-created power over the real estate of the debtor, and I think the obvious and reasonable construction is, that it was to be confined to the legal estate. The seisin here meant, is a legal seisin, and it could not have been the policy or intention of the statute, to have given such a summary power over trusts, which , cannot be reduced to possession, without the aid of a court, of equity. Such an interest resting, in equity only, and charged with complicated, and, perhaps, uncertain and unascertained burdens, is not the fit subject of a public sale. The value of the interest may not be susceptible of a ready and accurate estimation. It would lead to sale on mere speculation, and to a sacrifice of the subject. The case of an equity of redemption is by no means analogous. The case rests on grounds peculiar to a mortgage; for the mortgagor, while in possession, and before foreclosure (and the decisions have gone no further,) is regarded, at law, as well as in equity, as the real owner of the land. In this very case, how could a purchaser know what to bid upon the equitable interest remaining in the testator, after the debts for which the trust had been created, were discharged? He had no means of knowing whether there would be any, and if any, what residuum of interest resulting to the testator, after the trust had fulfilled its object. It is perfectly clear, that a mere equitable interest, like the one in this case, was not within the purview of the statute, or the jurisdiction of the Court of Probates.
The great object of the bill has,. then, failed. This trust e&tate is no more liable, in equity, to the outstanding debts, than the estate in Jamaica. The devisees in the one case, (who are all the children,) have as much equity as the plaintiff, who is the devisee in the other.
3. There is another prayer in the bill, which is for indemnity, and that part of the annuity payable to the testator’s widow may be charged upon the trust estate.
The heir is not entitled to contribution from wards the faction of Mpípecunií tirow®heedebt against the personalestateupon the^ devisee of
But different devisees, in respect toa charge devised, must deficiency ofas^ timuo'thevaiue
Where debts remain unsatisfied, after the and aiMhe^etd vised! are ex-ntes^’musf6" make up the deset^accordiug to the quantum and value of their respective interests.
The widow’s annuity, though not her legacy, was made chargeable upon all the testator’s estate in Jamaica, and eisewhere; and it is admitted that the plaintiff has paid the annuity as charged in the bill.
The heir is not entitled to contribution from the de- . . _ visse towards satisfaction of creditors. 11ns was so declared by Lord Hardwicke, in Palmer v. Mason, (1 Atk. 505.) and in the case, already cited, of Galton v. Hancock. Nor will the court interfere and help a Pecu™ary legatee, to tlirow the debt against the personal estate, upon the devisee of land, for their equi- . 1 . ' L ties are equal. (5th resolution in Haslewood v. Pope.) But here is a case arising between different devisees, in respect to a charge, to which their lands were equally bound by the will, and it is just, that the whole real estate should contribute in due and rateable proportions. Thus, in Carter v. Barnadiston, (1 P. Wms. 505. 509. 521.). two manors were devised, the one to A. and the other to B., and all the real estate was charged by the will, with payment of the debts. There was a mortgage debt uPon one of the manors, and Lord Ch. Cowper held, that the devissof the other, was bound to contribute proprotionably, to the payment of that mortgage, because the right of contribution %oas given by the will. The same rule was declared in Long v. Short, (1 P. Wms. 403.) in the case of two specific devisees of land. The Lord Chancellor said, it would equally disappoint the intention of the testator, to defeat either devise, by subjecting it to the testator’s debts, and therefore he held, that on a deficiency of assets, both estates must contribute, in proportion to the value of their respective premises.
The will, in the present case, is silent as to the debts, , , , and it appears to be very equitable, that the debts remaining after the personal estate, and after the undevised real estate is exhausted, (and which is alleged to be the fact in this case,) should be borne in rateable proportions, by all *159 ihe devisees, according to the quantum and value of their respective interests. This case comes within the principle of those decisions. The law charges the debts upon the real estate.
I shall, accordingly, declare, that the trust estate is not, in equity, chargeable with the outstanding debts, any more than the Jamaica estate, and that it is not bound by the order of the Court of Probates mentioned in the bill; that the trust estate, however, ought to contribute rateably with the estate in the island of Jamaica, belonging to the plaintiffs, to the discharge of their debts, and to the payment of the annuity to the testator’s widow. There must, accordingly, be a reference to a master, to take and state an account of the debts owing by the testator at his death, and of his real and personal estate, and of the application thereof, and the payments which have been made, and of the debts which still remain unpaid, their nature and amount, and how secured; and that the master take and state an account of the amount of the annuity of 600 pounds a year mentioned in the will, paid by the plaintiff, and the times when, and the interest thereon from each respective payment, and also the amount of the legacies due to the respective defendants, and of the interest thereon, from the time that the legatees respectively came of age; and that the master certify the amount and proportion that each devisee, as well the plaintiff as the defendants, is to contribute towards the payment of the said annuity and of the said outstanding debts, having due regard to the respective values of the estate in the island of Jamaica, belonging to the plaintiff, and of said trust estate, and to the proportion of interest which each of the devisees has in said trust estate; that the defendants John H. and B. L. account before the. master for the rents, issues, and profits of the trust estate, in the proportion that 5 bears to 24, and that the master make them all just allowances properly chargeable, in such proportion, together *160 with their reasonable expenses, (if any,) in the defence of this suit, exclusive of the taxable costs, and that the question of costs and the question relative to the release of ■the said trust estate by the said trustees, and all other questions, be reserved until the coming in of the report.
Order accordingly.