## METROPOLITAN LIFE INS CO v McKIM

Ohio Appeals, 5th Dist, Licking Co

Decided Sept 11, 1935

Fitzgibbon, Black & Fitzgibbon, Newark, for plaintiff in error.

Jones & Jones, Newark, for defendant in error.

## OPINION

By SHERICK, J.

This action is one at law upon a policy of insurance issued by the Metropolitan Life Insurance Company, plaintiff in error, The policy in part provides for compensation to be paid by the company to the insured upon total permanent disability. The cause terminated in the trial court in favor of the insured, upon a motion for a directed verdict made by the insured at the conclusion of all the evidence, upon which judgment was entered for him. From this judgment error is prosecuted, and three grounds of error are urged in this court. The first of these may be easily disposed of, and of necessity must cause a reversal of this cause.

At the conclusion of all the evidence, and in the absence of the jury, the defendant insurer moved for a directed verdict. Thereupon the insured interposed a like motion. Thereafter, as is shown by the record, the jury was recalled and advised in the following words:

"Members of the jury, at the close of the testimony, both parties made a motion to the court for a directed verdict, and, according to the decision of the courts, the court is compelled to direct you to return a verdict for the sum of $3,736.36 and the costs, which will be figured by the Clerk of Courts. So you will retire to the jury room and you will find the form of verdict here for the plaintiff, and the court instructs you to return a verdict for $3,736.36. The motion of the defendant is overruled."

It will be perceived that the court did not first rule upon the motion of the in-

surer, which was first interposed. Had he done so its counsel would have been afforded opportunity to protect their client, as against the court's adverse ruling, by a withdrawal of the motion, coupled with a request for the submission of the cause to the jury, which it would have had a perfect right to do. Had this request been followed, and the insured made no such subsequent request, as herein indicated, it could not now be heard to assert its claimed error. The court, however, proceeded to say to the jurors that it became his duty to sustain the insured's motion, and instructed the jury to return a verdict in plaintiff's favor. He concluded this instruction by the remark that the insurance company's motion was overruled. It is thereby apparent that it would have been futile thereafter for the insurer to have withdrawn its motion and to have asked for the submission of the controversy to the jury, for it had already been apprised of the court's notion that the evidence preponderated in favor of the plaintiff. Had the defendant then made such a request, and had the court's attention been directed to the authority which we shall hereinafter comment upon, the request would, without question, have been acceded to and the case would have gone to the jury with the highly probable consequence that the jury would have adopted the court's view of the facts and would have returned a verdict against the insurer, of which it could not thereafter have complained.

The case of Pittsburgh, C., C. & St. L. Ry. Co. v Luthy, Admr., 112 Oh St, 321, 147 NE, 336, must be, and is, decisive of this claimed error. It is therein held:

"Where, at the close of all the evidence submitted in the trial of a case which presents a jury issue, a motion is made by the defendant for a directed verdict, and thereupon a like motion is made by the plaintiff, and the court without passing upon the defendant's motion announces that the plaintiff's motion is sustained, and immediately, without affording the defendant any opportunity whatever to request a withdrawal of his motion and a submission of the case to the jury, directs the jury to return a verdict for the plaintiff, it appearing that there were disputed questions of fact, such action constitutes error prejudicial to the defendant, warranting a reversal of the judgment based upon a verdict so returned."

A perusal of the court's reasoning, as found on pages 326 and 327, may be indulged in with profit. We shall hereinafter revert to that portion of the syllabus of the Luthy case, supra, which reads, "it appearing that there were disputed questions of fact."

There are two phases of the second claimed error. It is maintained that the trial court erred in its refusal to direct a verdict in the insurer's favor. This is coupled with, or predicated upon, the assertion that the burden was upon the insured to prove that his disability was not a progressive, incurable ailment with which he was not afflicted prior to the date of the issuance of the policy. The contract of insurance named such as an exception to the risk underwritten. We have been directed to the case of John Hancock Mutual Life Ins. Co. v Hicks, 43 Oh Ap, 242, 183 NE, 93, (13 Abs 157). We may, however, in the present instance, see no need to pursue the reasoning and rule of that authority, for we note from the plaintiff's petition that it was averred and proved by plaintiff's testimony that his disability began as of a date subsequent to the delivery of the policy of insurance. Inasmuch as the plaintiff accepted and sustained this burden, the company's claim of error in this respect is not well taken. The third paragraph of the syllabus of the Hicks case, supra, is pertinent to the third claim of error. It is there held that the "insurer must plead and prove exceptions to risk covered by policy," and in conformity to this understanding the defendant in part answered that the insured's blindness was the result of the progress of an incurable ailment, which he contracted several years prior to the execution of the insurance contract, and that it was therein provided that such a resulting disability was an exception to the risk undertaken by the defendant company, which the policy of insurance did not cover.

The plaintiff, to maintain the issues by him created, voluntarily took the stand and testified as to the nature of his disability. Upon cross-examination he was asked if he had not consulted certain doctors about his eyes. His answer to these questions was in the affirmative, and he said that they examined his eyes and fitted him with glasses. Thereafter, the insurer, in seeking to make proof of its defense, offered and sought to prove by the testimony of these doctors that the insured was afflicted with the disease from which he now claims total disability long prior to the date of the con-

tract of insurance. This condition, the doctors would have said, had they been permitted to testify, was manifest to them from their examination of the plaintiff's eyes. This testimony was excluded upon the theory of a privileged communication. The plaintiff in error asserts that this might have been so, but that when the insured voluntarily took the stand in his own behalf, well knowing that he would likely be interrogated upon cross-examination, and testified, in part, as hereinafter noted, any such communication ceased to be privileged, as it had been voluntarily waived by the insured.

In **Ausdenmoore et, Exrs. v Holzbach, 89 Oh St, 381, 106 NE, 41,** the court defines the word "communication" as it is used in §11494, GC, and holds that it "may be not only by word of mouth but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis, and that that sort of communication is quite as clearly within the statute as a communication by word of mouth." That court then proceeds to consider the statute's further provision that "the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject," and says, "this qualifying clause we hold to mean that there cannot be a waiver except in two ways: First, by an express consent of the patient, or by the patient taking the stand and voluntarily testifying as to the things and matters communicated to his physician, the latter being held to be in effect an express waiver as to that physician."

Before proceeding further we remark that the Supreme Court in **Industrial Commission v Belay, 127 Oh St, 584, 190 NE, 456,** approves of and adheres to its prior pronouncement made in the Ausdenmoore case, supra.

From these authorities we reach the conclusion that the trial court erred in refusing to receive the excluded ▆▆▆▆ testimony offered by the insurance company from these physicians who had examined the insured's eyes prior to the date of the issuance of the policy. In accordance with the holding of the Ausdenmoore case, supra, the insured had communicated certain information to these doctors when he exhibited his eyes to them for examination. This communication might have remained privileged, but when the insured voluntarily testified in his own behalf on the subject, that is, says that "they examined me for the purpose of fitting me with glasses," he well knew and intended that his chosen physicians were to ascertain what his difficulty was and to correct that trouble. In the course of their examination the physicians perceived that he had an incurable ailment known as retinitis pigmentosa. They discovered by their examination, perhaps, as easily as if they had been told by the insured, that his eyes were then affected by this disease, and, as held in the Ausdenmoore case, word of mouth and learning by examination of the exhibited part of the patient's body are both communications to his physician. Upon trial, the insured now says that "his eyes went bad after he had had the 'flu' four years after he had procured the insurance." Had he told his doctors upon their examination that he had retinitis pigmentosa, and upon testifying had stated that he had only failing vision, and desired his vision to be corrected by being fitted with glasses, then surely the doctors might have been inquired of as to just what the patient did say or communicate to them. The purpose of the latter part of the statute, as counsel for the insured rightly says, is to disclose perjury. That is true when a witness knowingly testifies falsely. But if a patient communicates a fact unknowingly by exhibiting his body to his physician, and afterwards denies the truth of that fact to him unknown, perjury is not present. This portion of the statute, therefore, must have a further purpose, that being a proper inquiry to discover the truth concerning a certain disputed fact. The law is as much or more concerned in the discovery of the truth as it is in confounding one of perjury. Insured's counsel say that perjury is not present, hence the offered testimony was rightfully excluded. Our views are contra to this claim for the reasons herein stated. The insured cannot by this evidence be branded as a perjurer, neither will he be subject to ridicule, or contempt, by disclosure of the communications made to the physicians by examination of his eyes. The law seeks the truth. We assume that the insured is likewise motivated. The statute has a further purpose; it is intended to forestall frauds and the commission of perjury, but not to conceal the truth. It is a shield and not a sword to those who can, or may not, speak. But when one has communicated a fact to his ▆▆▆▆ physician, and afterwards voluntarily testifies concerning

that fact, his physician may testify with respect thereto.

Reverting now to the phrase of the syllabus of the Luthy case, supra, we conclude that the record before us not only contains some disputed questions of fact, one of which we trust has been developed by our discussion of just what was communicated by the insured to his physicians when he submitted himself to them for examination. The insured says he was just fitted with glasses. The statute contemplates that he might have communicated further facts to his physicians—that is such as they discovered upon examination, concerning which they stood ready to testify. Further, we would add, that the reason for the rule announced in the Luthy case, supra, is sound in principle, and in justice, in the presented controversy, even if the record contained no disputed, essential fact; for it affirmatively appears therefrom that offered proof, wrongly rejected by the trial court, directly controverted proof of an indispensable issue in the case. The plaintiff in error diligently tried to present a controverted issue. It was not responsible, by neglect, or otherwise, for the exclusi*n of its proffered testimony, which we conclude should have been admitted.

Judgment reversed and cause remanded.

LEMERT, PJ, and MONTGOMERY, J, concur.