57 P.(2d) 1141

**DELGADO v. RIVERA.**
No. 4157.

Supreme Court of New Mexico.

March 30, 1936.

Rehearing Denied May 29, 1936.

H. E. Blattman and M. E. Noble, both of Las Vegas, for appellant.

George E. Remley, of Santa Fé, for appellee.

BICKLEY, Justice.

This is an appeal from a judgment dismissing plaintiff's cause of action for malicious prosecution.

Defendant, Luis Rivera, executed and filed a criminal complaint with a magistrate in San Miguel county charging plaintiff, Francisco P. Delgado, then sheriff of said county, together with others, with having feloniously stolen a Colt's revolver, a Colt's automatic pistol and one 25-35 Winchester rifle of the property of defendant. The plaintiff was arrested, given a preliminary hearing resulting in his being held to answer in the district court. The district attorney presented an information against plaintiff charging the crime aforesaid, and plaintiff was tried in the district court of San Miguel county and acquitted.

Thereafter, plaintiff commenced this suit against defendant seeking damages for malicious prosecution. The case was tried to a jury before the Honorable Livingston N. Taylor, judge of the Eighth judicial district sitting for the Honorable Luis E. Armijo, who had been disqualified by statutory affidavit. Defendant moved for a directed verdict, finding the issues in favor of defendant, which motion was sustained.

The plaintiff as sheriff of San Miguel county, clothed with a search warrant, went together with several of his deputies, to the residence of Luis Rivera, at Tererro, in the nighttime to search the residence of the said Luis Rivera. A search was made to see if any one was near the house. No one was found. Plaintiff then knocked on the front door, but received no response. Plaintiff then left some of his deputies stationed around the house, while he, together with one or two of his deputies, went to the village of Tererro to look for Rivera, and, failing to find him, returned to the Rivera residence and proceeded to search the same. Plaintiff did not find what he was looking for, and together with the deputies aiding in the search, went out of the house, called in his guards, and drove away.

The theory of plaintiff's case is that defendant filed the criminal complaint heretofore mentioned maliciously, without probable cause, and knowing that the allegations thereof were untrue and that he procured the arrest of plaintiff and caused him to be tried as aforesaid upon false testimony. One of the points relied upon for reversal is that the trial court erred in refusing to permit plaintiff to introduce the testimony of himself and his deputies who went to the Rivera residence to search said residence for gambling paraphernalia. It is claimed that such evidence would have shown that neither plaintiff nor any one that went to the house with him took the property described in the criminal complaint which plaintiff was accused of stealing on said occasion.

As this is the principal point in the case, the nature of the testimony sought to be introduced by plaintiff, and his reasons for presenting the same, and the objections thereto, and the rulings of the court, will

be referred to more in detail. Plaintiff sought to prove and offered to prove that on the night in question, he stationed guards around the house of defendant Rivera in such a manner that the headlights thereof illuminated the sides and front of the house, searched the premises around the house to see if any one was there; that no one was there; that two or three of his deputies went to the house with him, that he searched the house for gambling paraphernalia, and, not finding any, left the house together with his deputies, and that neither plaintiff nor any one of his deputies or persons with him took the rifle and two pistols, and, furthermore, that the defendant Luis Rivera and Erasmo Carrillo, and Jose Flores, were not hiding behind two barrels close to the house, as the prosecution claimed in the testimony in the criminal case, and that the said Jose Flores and Erasmo Carrillo, who had apparently testified in previous proceedings against the plaintiff, could not have seen through the window from the place where they claimed they were hiding behind the two barrels, the plaintiff take the rifle, and that no one approached the window of the house on either side where the guards had been stationed by plaintiff. The court refused to admit such testimony tendered on behalf of the plaintiff.

Upon the direct examination of Miguel S. Sena, a witness offered by plaintiff, it appeared that said witness was a deputy sheriff and had gone with plaintiff and other deputies to the residence of the defendant, Luis Rivera. The examination of the witness had not proceeded far when the following colloquy occurred:

"Mr. Crist: This line of examination would indicate that this case is to try the case over again that was once tried. I submit the incompetence—

"The Court: We are not going to try that case over again, I don't know what the purpose of it is. I'll state Mr. Blattman that we are not going to try this other case, we are not here for that purpose.

"Mr. Blattman: I do not know just what the Court has in mind. We didn't propose to try the other case, we propose to prove the allegations of our complaint that this charge was false. This complaint that is in evidence, was false."

"Q. At what time of the day did you arrive at his house? A. It was probably some time after twelve o'clock at night.

"Q. And what, if anything, did you do when you arrived at the house of Luis Rivera?

"Mr. Crist: Objected to, if the Court please, it is opening up the entire proceedings upon which this case was formerly based, it means the trial of the case over again. The objection is, the Verdict of the Jury already introduced in evidence establishes that case so far as it goes. We are not going to try that case over again. As I understand, there was a complaint before the Justice of the Peace, and on that complaint, the Justice of the Peace issued a warrant, and on that warrant the defendants

were arrested, brought before the Justice of the Peace, and bound over to the District Court, and then the District Attorney filed an information and he was tried on that Information here and acquitted.

"Mr. Noble: But, if the Court please, we still have to show that the charge on which this was based was false. We have to show sufficient of those facts to show that this defendant in this case knew they were false at the time he filed this information. We can't do that without showing what happened down there to show why he knew it was false.

"The Court: All right, proceed. Overruled.

"Mr. Crist: Note an exception.

"Mr. Noble: The falsity of the charge depends on certain facts and on certain things that took place down there."

The court permitted the witness to answer a number of questions over the objection of defendant's counsel, and then the following occurred:

"Q. While you were there in the house of Luis Rivera, what did you do, and Francisco P. Delgado and Espiridion Arrelanes do, if anything? A. We just—

"Mr. Crist: Question objected to for the reasons already stated.

"The Court: Sustained.

"Mr. Blattman: To which ruling of the Court, the plaintiff excepts for the reason that under the allegations of the complaint, it is alleged that the defendant knew that this charge which he filed, this criminal complaint which he filed, was not true, and plaintiff takes the position that he is entitled to prove in this case, not only that he filed it knowing that it was not true, but that anything that he did in connection with it was malicious.

"The Court: What difference does it make what this man did when he was there, if the defendant was not present?

"Mr. Blattman: This is not a criminal case, in which any statements made by anyone there in the presence of the defendant would not be admissible, if that happens to be the case in which an admission might be tried to prove it might be correct.

"The Court: I can't see the materiality of what this man did in the defendant's home, or at the defendant's home when he didn't see him there that night.

"Mr. Blattman: That was perhaps just preliminary.

"The Court: Sustained.

"Mr. Blattman: Exception, for the reason that it is alleged in the complaint that the defendant did file before the Justice of the Peace, Precinct No. 61, San Miguel County, a criminal complaint, that he knew at the time he filed it that this plaintiff had not stolen anything from his house, and we now make tender to prove by this witness that this witness was there present all of the time and he, together with Espiridion Arrelanes and the plaintiff, Francisco P. Delgado, went into the house

of Luis Rivera, searched his house, and did not steal the property described in the criminal complaint filed in the Justice of the Peace Court of Precinct 61 of San Miguel County.

"The Court: Sustained.

"Mr. Blattman: And that Luis Rivera was not in the house and was not in and about the premises.

"The Court: Sustained.

"Mr. Blattman: Note an exception.

"Q. When you arrived at the house of Luis Rivera, what did you do about parking the cars in which you were traveling?

"Mr. Crist: We have been through the facts of this case twice already, I know just what he is leading to, and I object to it on several grounds: First, It is to try the case all over again and open up a new issue; Second: The Verdict introduced in this case establishes the very fact—

"The Court: What he is trying to prove, I can't tell, but I am not going to re-try that case.

"Mr. Crist: The testimony is opening that door to trying that same case all over again.

"The Court: Well, I don't know.

"Mr. Blattman: I might state that perhaps Mr. Crist is familiar with the facts as they might be developed in this case, but this Jury and Your Honor are not familiar with the facts, and the crux of this situation is that this defendant in this case, knew when he filed this complaint that it was not true, then what is the issue in this case if it isn't that very thing.

"Mr. Crist: Your Honor—

"The Court: Mr. Blattman, as I have ruled before, what difference does it make in so far as this case is concerned, what this witness did, he testified he didn't see him, Mr. Rivera, there that night, at his house, or downtown at Tererro, and he didn't see him at all. What difference does it make what he did?

"Mr. Blattman: Because, it's preliminary, perhaps the Court, at this moment, is correct, it wouldn't make any difference what this witness did unless Francisco P. Delgado was there, and unless this witness saw what Francisco P. Delgado did.

"The Court: Is this witness—isn't this witness one of the defendants in that case?

"Mr. Blattman: Yes, sir.

"Mr. Noble: It makes this difference, if the Court please, that his complaint is based upon the testimony of this defendant, and of another witness, that they saw through the window of that house, saw them take the weapons from this house.

"The Court: Who saw?

"Mr. Noble: Luis Rivera and another witness. And we expect to show that they were not there, and could not have been there, and could not have seen. It is false.

"The Court: When the defendant was there?

"Mr. Noble: We expect to show by the testimony of these witnesses, not only that they were not present but that there was no one except the Deputy Sheriffs—

"The Court: I can't see the materiality of it.

"Mr. Crist: This is precisely the issue that was in the criminal case.

"Mr. Blattman: Perhaps it would not make any difference, and it would not be material what this witness did, because he is not a party in this case, but if he was with the Plaintiff, Francisco P. Delgado, all of the time that Francisco P. Delgado spent in that house, and saw what he did, and can say that he knows because he was there and knows Francisco P. Delgado did not take any gun from there, isn't that material?

"The Court: The Verdict is in evidence, the case was tried, as I understand, he was charged with stealing the guns from that house, and was acquitted?

"Mr. Blattman: Yes, sir.

"The Court: That is a closed issue, as far as this Court is concerned.

"Mr. Blattman: It is my recollection that there is authority to the contrary, your Honor, and I will ask if the Court will permit us to cite such authorities, if we can find them?

"The Court: If it will do any good, that is my ruling.

"Q. State whether or not Mr. Delgado stationed any guards around the house of Luis Rivera when he arrived on the evening of May 20th?

"Mr. Crist: Objected to for the same reasons already stated. I don't want to re-try that former case.

"Mr. Noble: On that point, in order to prove the falsity of the allegation in the criminal complaint in the first instance, and that it was done and made knowingly, seems proof that Luis Rivera, who testified in the preliminary hearing and in the hearing in the District Court, that he saw this done, was not there, could not have seen it, and he therefore, knew the testimony on which he based this complaint was false because he was not there and could not have been there.

"The Court: I understood this witness to say a moment ago that Mr. Rivera was not at home and they went down to the Little Town of Tererro, and they didn't see Mr. Rivera that night.

"Mr. Noble: We want to show in addition to that, that he couldn't have been where Rivera said he was.

"The Court: That was in the other case.

"Mr. Noble: We have to show that in order to show that the testimony was false and sworn to a lie at the time because it was a lie, and he couldn't have been there. We have got to show those things. Unless you admit that the Jury returned a Verdict of not guilty and that

he lied straight through that case. We have got to show that he couldn't have been, the fact that people were there and did not see him. We want to prove by this witness to show where the other men were, to show that Luis Rivera was not where he testified he was.

"Mr. Crist: That was all gone over in that criminal case.

"Mr. Noble: Certainly it was in the criminal case, we have got to prove part of that criminal case.

"The Court: We are not going to try that criminal case again.

"Mr. Noble: Why shouldn't we be permitted to prove those facts, otherwise, we are precluded from proving this case.

"The Court: I'm trying this case, not the other case.

"Mr. Noble: I know it, but why can't we prove the facts in the other case, merely because they are the same facts in two cases?

"The Court: Are you anticipating a different action in this case?

"Mr. Noble: No, we are not. But we have got to prove sufficient of this in order to prove that he could not have been there, and could not have known about this.

"The Court: You anticipate what Mr. Rivera will say in this case. This is the case we are trying, not the case down there, and we are going to try this case, not that case down there.

"Mr. Noble: Yes, we are going into it to this extent, the grounds on which he based his criminal information.

"The Court: We are not going to try that case down there.

"Mr. Noble: If he said certain things were stolen from him, he would have to have certain grounds for knowing that they were stolen. We wish to prove that he was not where he could have known.

"The Court: You don't want to prove that the guns were not missing?

"Mr. Noble: No. But Luis Rivera and the other witnesses who testified in the criminal case could not have had any opportunity for knowing whether they had stolen those guns or not, that they had no probable cause for the Information, and that their testimony in the Criminal case and the testimony on which the Criminal Information was filed was false testimony, that it was known by the defendant to be false because of the fact that he testified in the other cases to a certain set of facts because he wasn't there.

"The Court: If they hadn't been true, the Justice of the Peace would have turned them loose, but he bound them over.

"Mr. Noble: On false testimony, Yes, that is what we are trying to show. We are trying to show that he, Luis Rivera, saw these men take that gun himself, we expect now to prove that he did not see them, because he wasn't there, and couldn't have been there.

"The Court: You are anticipating—

"Mr. Noble: No. That is what we are trying to prove.

"The Court: All right, go ahead.

"Mr. Crist: Exception.

"Q. State whether or not Mr. Delgado stationed any guards around the house of Luis Rivera when he arrived on the evening of May 20th? A. Yes.

"Q. And who were those guards?

"Mr. Crist: Question objected to for the reasons already stated.

"The Court: Overruled, to save time.

"Mr. Crist: Note an exception.

"A. Leofredo Alarcon, Espiridion Arrelanes and myself.

"Q. Where was Espiridion Arrelanes placed with respect to the house of Luis Rivera?

"Mr. Crist: Question objected to for the reasons stated.

"The Court: Objection sustained.

"Mr. Crist: They are going step by step to go into this case, they are opening the door to try that criminal case all over again.

"The Court: Objection sustained.

"Mr. Blattman: If the Court please, I would like to get the Court's view on this. I have heard you say that we would not go into the trial of the criminal case.

"The Court: What difference does it make to the Court in this case, where this man was, or what he did? Let's get down to the meat of this case.

"Mr. Blattman: We must establish a prima facie case first, so that when we do, if the defendant puts on some defense, we'll meet that then. Now, what we are trying to do is establish a prima facie case upon which the Court might be called to rule, and if this witness was there all of the time that the plaintiff was there, and will show to the Court and Jury who also was there, all around that house, so that there is only one conclusion that this Court and this Jury could come to, then why isn't it material, when that is the only evidence that the plaintiff has at his command?

"The Court: Bring that in on rebuttal.

"Mr. Blattman: But if the defendant does not take the stand, on the question of whether we have made a prima facie case or not?

"The Court: Sustained.

"Mr. Blattman: Exception. We now tender to prove by this question, and others showing the same line of examination, the following statement of facts:

"Mr. Crist: Now, if the Court please, I suggest the Jury be withdrawn while the statement is being made.

"The Court: Gentlemen of the Jury, will you step to the Jury Room, please? (Jury retired from the courtroom.)

"Mr. Blattman: We now tender to prove by this witness that when this witness

and other persons whose names he has given, arrived at the house of Mr. Rivera, Mr. Delgado stationed guards around the house of Luis Rivera, placed the cars in such position that the light shone on three sides of this house, the front part of the house and the sides, and he stationed guards all the way around it, searched the premises around to see if anyone was hiding, and that this witness, and the plaintiff and two other persons went in the house, searched it and came out and did not take the articles alleged in the complaint to have been stolen, by the plaintiff.

"The Court: (Objection.) Sustained."

We have quoted thus at length because these excerpts from the record illustrate more effectively than we could ourselves describe the confusion in the minds of eminent counsel for the defendant and learned trial judge as to the principles which govern the situation.

■ In an action for malicious prosecution, the plaintiff assumes and must discharge the burden of proving malice. Standard Encyc. of Evidence, vol. 8, page 414. See, also, Leyser v. Field, 5 N.M. 356, 23 P. 173.

■ Malice may be inferred by the jury from the want of probable cause. Standard Encyc. of Evidence, page 401; Leyser v. Field, supra.

■ Want of probable cause is a necessary element of cause of action for malicious prosecution and burden of proof is on the plaintiff. Vincioni v. Phelps Dodge Corporation, 35 N.M. 81, 290 P. 319.

Counsel for plaintiff were endeavoring by the evidence offered to discharge this burden. Our conjecture is that the court accepted the erroneous view of the counsel for defendant that evidence of the judgment of acquittal of plaintiff of the claim charged made out a prima facie case for plaintiff so far as want of probable cause was concerned and that until defendant offered evidence to overcome such prima facie case, the facts giving rise to the criminal prosecution was "a closed issue."

Even if counsel for defendant had plainly taken the position above indicated, the plaintiff was wise to not rely upon it.

"In a limited number of decisions it has been held that an acquittal is prima facie but not conclusive evidence of want of probable cause." 38 C.J. Malicious Prosecution, § 48, note 66.

In other decisions it has been held that proof of acquittal does not amount to prima facie evidence of want of probable cause and that an acquittal is no evidence at all of a want of probable cause for the prosecution. 38 C.J. Malicious Prosecution, § 48, notes 74, 75.

■ If the court and counsel for defendant considered, as it seems they did, that proof of acquittal is prima facie evidence of want of probable cause, they fell into this error likely from a failure to differentiate the rule that plaintiff cannot main-

tain the action for malicious prosecution where he has been convicted and the judgment of conviction has not been reversed. In 8 Encyc. of Evidence, page 409, it is said: "Plaintiff's conviction by a petit jury is prima facie evidence of probable cause." And there is authority to the effect that a final judgment of conviction is conclusive as to the existence of probable cause for the prosecution. Kruegel v. Stewart (Tex.Civ.App.1904) 81 S.W. 365; Severance v. Judkins, 73 Me. 376. Since a recovery in an action for malicious prosecution is predicated directly upon a want of probable cause, permitting such a recovery would naturally constitute a collateral attack upon the judgment of conviction. For as is said by the courts generally, the latter is conclusive evidence as to the existence of probable cause. In that sort of a situation, the law looks with disfavor at the resulting multiplicity of suits and is very reluctant about granting a person who has been convicted a hearing, the very nature of which must question the wisdom or validity of the decision of a court of record and therefore refuses to inquire as to probable cause at all. Some of the reasons for this rule are thus stated: "The reasons for this rule are based upon considerations of policy and social necessity. Courts time and again have declared that matters once adjudicated should not be again drawn in issue while the former adjudication remains in force: 1 Freeman on 'Judgments' 78. This avoids hardship and vexation to innocent prosecutors: Phipson on 'Evidence' p. 407, note 4. It

prevents bringing the courts themselves into disrepute: Van Fleet on 'Collateral Attack' sec. 1. The parties must come prepared at the trial to vindicate themselves and to detect the falsity of the testimony, for a losing party cannot collaterally attack a judgment simply because he was not prepared to meet his adversary at the first trial: Smith v. Lewis (1808) 3 Johns.(N.Y.) 157, 3 Am.Dec. 469. The plaintiff in most cases has a direct remedy, as by appeal or writ of error, to avoid the judgment for the alleged fraud: Wick v. Rea (1909) 54 Wash. 424, 427, 103 P. 462. For these reasons the courts will not permit a collateral attack, even though fraud or perjury has intervened." Illinois Law Review, vol. 25, page 959.

Also in support of the effect of a judgment of conviction to establish probable cause, for the prosecution it is suggested in Fox v. Smith, 26 R.I. 1, 57 A. 932, 933, 3 Ann.Cas. 110: "In such a case the prosecutor must prove, not simply that the defendant is probably guilty—which would show that there was probable cause for the prosecution—but he must prove that the defendant is guilty beyond a reasonable doubt." In Vincioni v. Phelps Dodge Corp., supra, we said that it is invariably held that a conviction, though reversed, is at least prima facie evidence of probable cause.

As we have said, the majority rule seems to be that the judgment of acquittal is not even prima facie evidence of want of probable cause. Some of the rea-

sons in support of the effect of a judgment of conviction do not appear to be applicable where the judgment is one of acquittal. An acquittal may result from some technical error or irregularity, or other circumstance having no bearing on the question of probable cause for the prosecution; the complainant may be unable to produce a material witness, and many other facts may exist for while having a bearing upon the action of the court, have no bearing whatever on the question of probable cause. And as in the case of acquittal, the prosecution has no right of appeal, this consideration mentioned above in support of a judgment of conviction disappears where the judgment is acquittal.

The contrast between the situations is thus pointed out in 18 R.C.L. Malicious Prosecution, § 23: "While a conviction, even though afterwards reversed, may prove that there was probable cause for the institution of the original proceedings, it does not follow that a failure to convict will show a lack of probable cause for the prosecution. The defendant is entitled to an acquittal and discharge if, upon the whole evidence, both of the prosecution and defense, there remains a reasonable doubt of his guilt, although it may appear that there was not only probable cause for the prosecution, but a strong probability of his guilt. And it would tend very much to discourage honest efforts to enforce the criminal laws if every person who instituted a prosecution in which the defendant was subsequently acquitted should for that reason be presumed to have acted without probable cause, and liable in damages for malicious prosecution. The result of a trial often depends upon many contingencies which could not have been anticipated, and a prosecution may turn out to be entirely groundless, although the, facts and circumstances known to or ascertainable by the prosecutor at the time it was instituted seemed to point unerringly to the defendant's guilt. Accordingly, the great weight of authority and reason is that the mere fact of the acquittal of a defendant upon the trial of a criminal charge is not prima facie evidence of the want of probable cause for the prosecution."

■ It is generally held that a defendant in a suit for malicious prosecution may collaterally attack a judgment in a criminal case by showing that the plaintiff, though acquitted, was actually guilty of the crime charged. See Nettleton v. Cook (1917) 30 Idaho, 82, 163 P. 300; Parkhurst v. Masteller (1881) 57 Iowa, 474, 10 N.W. 864; Whipple v. Gorsuch (1907) 82 Ark. 252, 101 S.W. 735, 10 L.R.A.(N.S.) 1133, 12 Ann. Cas. 38. In a note to the text on Malicious Prosecution in Encyc. of Evidence, vol. 8, at page 397, it is said: "According to the weight of authority, the rule appears to be that if the defendant can satisfy the jury that the plaintiff, notwithstanding his acquittal, was in fact guilty of the crime with which he was charged, no recovery can be had." Citing cases.

This being so, it was the business of plaintiff to anticipate that the defendant might try to do that in the case at bar, and since what the defendant must prove the plaintiff may disprove, discretion, if not necessity, dictated that he in effect rebut in advance.

Plaintiff wisely differentiated the application of the two rules above referred to and sought to make out a prima facie case independently of the fact that the criminal prosecution had terminated favorably to him. In 8 Encyc. of Evidence, Malicious Prosecution, page 412, it is said: "In an action for malicious prosecution, the burden is on plaintiff to clearly show by a preponderance of evidence that the prosecution was instituted without probable cause. It will not be inferred from the mere fact of prosecution."

In note 93 to the foregoing text, it is said: "The fact that plaintiff was acquitted or the prosecution abandoned is not sufficient proof to sustain an allegation of probable cause." Citing Lancaster v. Langston, 36 S.W. 521, 18 Ky.Law Rep. 299.

And further: "To support an action for malicious criminal prosecution the plaintiff must prove, in the first place, the fact of prosecution, and that the defendant was himself the prosecutor or that he instigated its commencement and that it finally terminated in his acquittal. He must also prove that the charge preferred against him was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice * * * The burden of proof in the first instance is upon the plaintiff to make out his case and if he fails to do so, in any one of these particulars, the defendant has no occasion to offer any evidence in his defense." Citing cases.

It seems that the judgment of plaintiff's counsel was vindicated because when the court sustained defendant's motion for a directed verdict, he apparently did not consider that the judgment of acquittal sufficed to make out a prima facie case for plaintiff. A consideration of the colloquy by the court and counsel heretofore quoted shows that the plaintiff was unduly hampered in developing his case. Counsel for plaintiff stated at one time that the immediate question had been of a preliminary nature and that perhaps the court at that moment was correct in his view. Counsel for defendant suggests that the tender made by counsel for plaintiff was insufficient, but in view of the diametrically opposed views of counsel for plaintiff and those of the court as to the principles controlling the admissibility of evidence along the line sought to be introduced by plaintiff, we are not disposed to scrutinize very closely the tender with respect to its sufficiency. We think it plain that the plaintiff had the right to introduce evidence of the general character he was seeking to introduce to show that the defendant did not have probable cause for instituting the criminal prosecution. It is

to be noted in this connection that in support of the allegation of want of probable cause that the plaintiff had the right to show that the defendant did not believe and that there were no sufficient facts known to defendant upon which to base the criminal charge filed by him. Probable cause is in effect the concurrence of the belief of guilt with the existence of facts and circumstances reasonably warranting the belief. See note to section 711 of Jones, Commentaries on Evidence, Second Edition.

From all of the foregoing, it appears that the judgment must be reversed. It would not be necessary to further consider the record, but in view of the fact that the case may be again tried, we think it proper to consider two other points presented by appellant, viz., points 2 and 4 as follows:

"2. The trial Court erred in refusing to permit appellant to testify as to the kind of business appellant had been conducting in the past. That he had served as a soldier in the United States Army in the Spanish American War, and that thereafter he was employed by the Atchison, Topeka & Santa Fe Railway Company, as a machinist, and that later he was a receiver of the Las Vegas State Bank, a defunct State Banking Institution; that he was, on the 20th day of May, 1933, engaged in extensive cattle and sheep raising business."

"4. That the Court erred in refusing Appellant to introduce testimony with re-

spect to the financial responsibility of the defendant, Luis Rivera and appellee herein, so as to aid the jury in arriving at their verdict on the question of punitive or exemplary damages, and as to the value of the land and property owned by said Luis Rivera in order to establish his financial responsibility."

First we consider point 2. In cases where the belief of the accuser in the guilt of the accused is an important factor, it may become proper for the jury to determine whether the prosecuting witness had reasonable ground for entertaining the belief, in the face of the known good character of the accused. Where a person has an unblemished character, it requires more evidence to create a reasonable belief of guilt than where the accused has a bad character; and in cases where the prosecution is based on belief, this character of evidence is proper for the purpose indicated. If it should be developed on the trial, however, that the prosecution was not based upon the belief of the defendant Rivera, but upon his own knowledge of the facts, then it would seem that the reason for the rule just stated ceases, and, consequently, the rule disappears. We do not feel sufficiently advised as to whether the criminal prosecution was based upon defendant Rivera's belief or upon his claimed personal knowledge of the facts to rule upon the specific point as here presented, but what we have said may serve somewhat to point the way in case similar evidence is offered at another

trial, for the limited purpose here indicated.

We think the appellant's point No. 4 is well made. In vol. 8 Encyc. of Evid. Malicious Prosecution, p. 429, we find the following: "It is competent for plaintiff to prove the financial condition of defendant and his ability to respond to a judgment."

The judgment is reversed, and the cause remanded, and it is so ordered.

SADLER, C. J., and HUDSPETH, BRICE, and ZINN, JJ., concur.