421 P.2d 804

Carroll WILLIAMS, Plaintiff-Appellee,

v.

CITY OF GALLUP, New Mexico, an incorporated municipality, and Mountain States Mutual Casualty Company, a corporation, Defendants-Appellants.

No. 7865.

Supreme Court of New Mexico.

Oct. 17, 1966.

Dec. 5, 1966.

288

John H. Schuelke, Gallup, for appellants.

Denny & Glascock, Gallup, for appellee.

## OPINION

WOOD, Judge, Court of Appeals.

Defendants appeal from a workmen's compensation judgment in favor of plaintiff. The appeal raises three issues: (1) whether the accident arose out of plaintiff's employment, (2) the physician-patient privilege and (3) admission into evidence of two medical bills.

Plaintiff used a three-wheeled motor scooter in his duties as a meter reader for the City of Gallup. On the morning of the accident he started his motor scooter and let it run for five minutes to warm up. During the warm-up period the gears were in neutral and his right foot was on the brake. At this point he "blacked out"; his next recollection was being in the hospital.

The motor scooter was parked on a ramp, with a downward slope to the west. This ramp had a retaining wall on its northerly edge; the wall was at the southern boundary of the alley. At the western end of the wall the ramp drops 8 to 10 inches to the alley.

The motor scooter was found in an upright position, facing north in the alley which runs east and west. Plaintiff was lying on his left side with his head near a pot hole in the alley and with his legs still in the scooter. The distance from where the scooter was parked on the ramp to where it was found in the alley is 25 to 30 feet.

A co-worker of plaintiff had seen him sitting on the seat of the scooter with his head bent down almost to the floor of the scooter. At the time of this observation the motor of the scooter was not running.

There is conflicting evidence as to whether plaintiff had complained, before the accident, that he got dizzy spells when he stooped over to read meters.

Plaintiff suffered a skull fracture and his condition was diagnosed as post-traumatic epilepsy.

Under § 59–10–13.3, N.M.S.A.1953, the injury must "arise out of" and "in the course. of" the employment to be compensable. Defendants claim that there is no substantial evidence to support the finding of the trial court that plaintiff's injury arose out of his employment.

For an injury to "arise out of" the employment, there must be a showing that the injury was caused by a risk to which the plaintiff was subjected by his employment. The employment must contribute something to the hazard of the fall. Compensation has been denied where the risk was common to the public, Martinez v. Fidel, 61 N.M. 6, 293 P.2d 654, and where the risk was personal to the claimant, Berry v. J. C. Penney Co., 74 N.M. 484, 394 P.2d 996; Luvaul v. A. Ray Barker Motor Company, 72 N.M. 447, 384 P.2d 885.

The difficulty is not in defining the test, but in applying it. As stated in Larson's Workmen's Compensation Law § 12.11:

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment."

In Luvaul, the plaintiff suffered a dizzy spell, fell and suffered a skull fracture when he hit the floor. In denying compensation, the court said:

"Thus, we have a case in which the employee falls, while at work, on an ordinary, ground-level, concrete floor, and, in the course of the fall, hits no machinery or other objects, nor does he fall from a platform or roof to the ground. The problem is made more difficult where a pre-existing infirmity may have caused the fall or contributed thereto.

"* * *

"Although it may be difficult to distinguish between a fall from a platform or ladder, or against some object such as a machine, and a fall to the floor, we must recognize the fundamental principle that the employment must contribute something to the hazard of the fall."

In Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1, the plaintiff slumped into a sitting position on the platform on which he had been standing and fell from the platform to the ground. The trial court found that Christensen died from injuries resulting from the fall. In affirming the award of compensation this court rejected the claim that the injuries did not result from an accident arising out of the development. The court held that if the

injuries were due to the fall the employer is liable even though the fall was caused by a pre-existing idiopathic condition.

In this case, the only medical testimony admitted into evidence was that the injuries (the skull fracture and posttraumatic epilepsy) were caused by the fall.

■ The Luvaul and Christensen decisions do not conflict. In Luvaul there was a level floor. In Christensen there was a platform. The use of the platform in Christensen contributed to the risk of the fall, and the decision is consistent with our test for "arising out of" the employment. Here, the use of the motor scooter on the ramp contributed something to the hazard of the fall and meets the "arising out of" test.

Plaintiff claimed the physician-patient privilege to prevent Dr. Leroy Miller from testifying. This claimed privilege is based on § 20-1-12(d), N.M.S.A.1953, the applicable portion of which reads:

"* * * nor shall any doctor or nurse employed by a workmen's compensation claimant be examined relating to a workmen's compensation claim without the consent of his patient as to any communication made by his patient with reference to any physical or supposed physical disease or injury or any knowledge obtained by personal examination of such patient * * *."

Citing numerous cases, both for and against, VIII Wigmore on Evidence, McNaughton Rev.1961, § 2389 states:

"(2) The party's own voluntary testimony, on trial, to his physical condition in issue, should be a waiver of the privilege for the testimony of a physician who has been consulted about the same physical condition in issue * * *"

Our statute on voluntary testimony is more restrictive. Section 20-1-12(f), N.M.S.A.1953, reads:

"If a person offer himself as a witness and voluntarily testify with reference to the communications specified in this act [section], that is to be deemed a consent to the examination of the person to whom the communications were made as above provided."

Thus, for voluntary testimony to be deemed a consent to examining Dr. Miller as a witness, plaintiff must have testified concerning communications made by him to Dr. Miller.

Plaintiff had two seizures following the fall at which he suffered his skull fracture. He was hospitalized in Gallup after each of these seizures. After the second hospitalization, Dr. Keney, the local doctor, sent him to Dr. Miller in Albuquerque. Dr. Miller's bill was introduced into evidence through Dr. Keney's testimony. This bill showed that Dr. Miller gave plaintiff a neurological examination and performed a

lumbar puncture during the time plaintiff was in St. Joseph's Hospital.

On direct examination, plaintiff testified that when released from the Gallup hospital after the second seizure, he went to St. Joseph's Hospital in Albuquerque where he was hospitalized for three days, that while there he was treated by Dr. Miller (no other doctor is mentioned), that prior to this hospitalization he was not taking medicine, that after the hospitalization he was taking Dilantin, and while taking Dilantin he has not had any problem. Also on direct examination the bill of St. Joseph's Hospital was admitted into evidence on plaintiff's offer. This bill shows while in that hospital he had treatment consisting of chest and skull X-rays and an e. e. g., that he was given drugs and that the hospital laboratory was used on his behalf.

Plaintiff claims that the above testimony was not testimony as to communications with Dr. Miller. He relies on Phelps Dodge Corporation v. Guerrero, 273 F. 415 (9th Cir. 1921), where it was held that testimony that does not recite the communication does not waive the privilege.

■ We reject such a narrow view of the meaning of communication. While communication includes the verbal communication of the patient to the physician, it also includes the information or knowledge gained by observation and personal examination of the patient. Howard. v. Porter, 240 Iowa 153, 35 N.W.2d 837. The information obtained through observation or examination of the patient includes all inferences and conclusions drawn therefrom. Sher v. De Haven, 91 U.S.App. D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937 (1952). There is communication by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis. Metropolitan Life Ins. Co. v. McKim, 54 Ohio App. 66, 6 N.E.2d 9.

■ The communications privileged under § 20-1-12(d), N.M.S.A.1953, includes information or knowledge obtained by the physician by observation or examination of the patient or any part of his body. The privilege also extends to inferences and conclusions drawn from such observation or examination.

■ If the patient testifies with reference to these communications, then under § 20-1-12(f), N.M.S.A.1953, the physician may be examined concerning these communications.

■ Plaintiff voluntarily testified to the hospitalization, the treatment by Dr. Miller while in the hospital and the Dilantin. In addition, he voluntarily introduced the hospital bill showing the treatment received while there. There are divergent views as to the effect of this testimony. The different views are as follows:

(1) The testimony is to be deemed a consent to examination of Dr. Miller and the exclusion of Dr. Miller's testimony is

error requiring a new trial. This view relies on Metropolitan Life Ins. Co. v. McKim, supra, where the patient testified that "they examined me for the purpose of fitting me with glasses." The Ohio court held that such testimony waived the privilege with the result that the doctor could testify with respect to the eye examination.

Defendant's counsel tendered two medical reports of Dr. Miller. One of the medical reports of Dr. Miller gave an opinion on the assumption that the history received about the plaintiff was true. Further, counsel stated to the court "that Dr. Miller would say that the alleged disability is not and was not probably caused by this accident." With Dr. Miller's testimony excluded, there was only one medical witness. Because of the opposed views of counsel for defendant and the court as to the admissibility of Dr. Miller's evidence, this first view would follow Delgado v. Rivera, 40 N.M. 217, 57 P.2d 1141. There, the court, in a similar situation said, " * * * [W]e are not disposed to scrutinize very closely the tender with respect to its sufficiency. * * *"

(2) The testimony is not sufficient to constitute a waiver of the privilege. Dr. Miller's testimony was properly excluded. This view points out that plaintiff, on his direct examination, did not testify as to anything that plaintiff "said" to Dr. Miller. Nor did plaintiff testify as to any "acts" which were communications with the doctor. Plaintiff did not testify that Dr. Miller examined him. The testimony as to the hospitalization and the Dilantin is not related to the injury of which plaintiff complains.

This second view questions the correctness of Metropolitan Life Ins. Co. v. McKim, supra. Even if the Ohio case should be followed, it does not apply to the facts of this case. This view points out that no authority has been cited (or found) for considering the hospital bill on the question of whether the privilege has been waived.

(3) If there was error in excluding Dr. Miller's testimony, it was harmless. This view is that the opinion expressed in the medical reports of Dr. Miller raises no issue as to causal connection. Dr. Miller's opinion is not in conflict with Dr. Keney's opinion of the causal connection between the accident and injury. If Dr. Miller had been allowed to testify, the result would be the same. See Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679.

Under this third view Dr. Miller's assumption that he received an accurate history is speculation which should not be considered as a part of the tender. Counsel's statement as to what Dr. Miller would say was not included in the tender that was finally made. Accordingly, § 21–2–1(10), N.M.S.A.1953, is applicable, and if error occurred, it was harmless.

While no more than two of the participating judges are in agreement as to any of these divergent views, a majority are of the opinion that the ruling of the trial judge on the admissibility of the questioned medical testimony should be affirmed. They arrive at this conclusion either under view (2) or (3), or a combination of them.

Two medical bills were admitted into evidence over objection of defendants that the services itemized thereon had not been shown to be reasonably necessary as a result of plaintiff's accident. Plaintiff's Exhibit 11 is a hospital bill from the San Francisco Medical Center and plaintiff's Exhibit 12 is a doctor's bill from the San Francisco Medical Staff. Dr. Keney, the local doctor, when asked about the exhibits, did not answer that they were reasonably necessary as a result of the accident, but, "I think it was necessary that he be investigated as much as possible. I feel that this gave him the maximum benefit, maximum medical benefit."

Plaintiff's counsel pointed out to the trial court that the doctor was "talking about the condition from which he [plaintiff] was suffering."

Dr. Keney testified that plaintiff suffered from post-traumatic epilepsy which was caused by the accident. Dr. Keney also testified that plaintiff suffered from a kidney infection and high blood pressure and that he could not relate either of these conditions to the accident.

Defendants' objection to plaintiff's Exhibits 11 and 12 should have been sustained and the exhibits excluded until it was shown that the services for which the bills were rendered were reasonably necessary as a result of plaintiff's accident. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671.

Plaintiff argues that § 59–10–19.1, N.M. S.A.1953, entitles plaintiff to collect for *all* reasonably necessary medical bills incurred after the injury. Section 59–10–19.1, N.M.S.A.1953, pertains to bills reasonably necessary in the care of a worker as a result of a compensable injury.

The admission of plaintiff's Exhibits 11 and 12 was error. On all other points the judgment is affirmed. The cause is remanded with instructions to enter a new judgment which does not allow recovery for plaintiff's Exhibits 11 and 12.

It is so ordered.

CHAVEZ, MOISE and COMPTON, JJ., concur.

WOOD, J., Court of Appeals, dissenting in part.

NOBLE, J., concurring in part and dissenting in part.

WOOD, Judge, Court of Appeals (dissenting in part):

Plaintiff's testimony as to the hospitalization, the Dilantin and the fact that he was

## 294

treated by Dr. Miller is testimony as to acts which necessarily infer communication with the doctor concerning the physical condition for which he received the hospitalization, the medicine and the treatment. If more is needed, plaintiff provided it when he introduced the hospital bill which detailed the treatment received.

The exclusion of Dr. Miller's testimony was error. To say the error was harmless is to interpret an ambiguous record as to the tender in favor of exclusion of evidence. Modern authority favors the reception of evidence rather than its exclusion. State v. Schrader, 64 N.M. 100, 324 P.2d 1025.

I dissent from the views which affirm the exclusion of the doctor's testimony.

NOBLE, Justice (concurring in part and dissenting in part).

I agree with the result reached by the opinion and agree that the testimony of Dr. Miller was properly excluded, because the claimant did not waive the privilege afforded by § 20-1-12(b), N.M.S.A.1953, by voluntarily testifying with reference to any communication made by him to Dr. Miller with respect to any injury or his physical condition. I disagree, however, with what appears to be a determination that the record discloses a sufficient tender to present the issue on appeal respecting waiver of the privilege provided by the statute. I find no sufficient offer to prove

an opinion of Dr. Miller as to causal connection between the disability and the accident. In my view, Delgado v. Rivera, 40 N.M. 217, 57 P.2d 1141, is clearly distinguishable. The opinion in that case quotes at great length the discussion between counsel and the court respecting counsel's endeavor to introduce testimony and the diametrically opposed views of counsel and the trial court respecting the legal principles controlling the admissibility of evidence along the lines sought to be introduced. I find nothing in Delgado which permits the preservation of error without a proper tender of the evidence excluded. In my view, the record in this case contains nothing like the showing made in the Delgado case. I, therefore, dissent from the view that Delgado dispenses with the necessity of a proper tender of proof to preserve error. I do agree with the result reached by the opinion.

On Motion for Attorney Fees

PER CURIAM.

In his brief, plaintiff requested that attorney fees be allowed. We overlooked this request. Plaintiff has called this oversight to our attention by motion. Although our opinion disallowed two medical bills, the award of compensation to plaintiff was affirmed. Therefore, attorney fees in the sum of $1,000.00 are awarded to plaintiff for the services of his attorney on appeal.