ZEHMER, Chief Judge.
The Claimant in this workers’ compensation case appeals an order denying his claim for medical benefits and for temporary partial disability and wage loss benefits on the finding that the injury did not arise out of his employment. We reverse and remand for further proceedings.
When this claim was heard by the judge of compensation claims on January 19, 1993, Claimant was 68 years old and had a varied work history, holding a Master’s degree in music. At the time of the accident, he was working for the county during the summertime as a cashier at the county’s public swimming pools. Claimant’s job required him to work at a number of pools throughout the county and to collect money and later deposit the receipts in the night depository at a local bank. Claimant testified that he drove his own vehicle to the pools and to the bank on these occasions at the county’s request.
*780 On August 23,1990, Claimant was working at one of the county-owned pools located approximately 20 miles from the bank and from his home. On that particular day, Claimant testified that he experienced nothing unusual regarding his job duties and did not feel physically strained or different. He specifically remembers leaving the pool and driving out of the city toward the bank twenty miles away to make the usual night deposit; however, he has absolutely no recollection of what occurred immediately before, during, or after an automobile accident in which he was involved on the way to the bank, other than that he was told that he ran into the back of another car. The medical evidence ultimately accepted by the judge reveals that Claimant had apparently lost consciousness just prior to the accident and that the cause of this syncopic episode, or fainting spell, was a preexisting condition known as “sick sinus syndrome.” This syndrome can cause instances of an increased (tachycardia) or decreased (bradycardia) heartbeat. In Claimant’s case, his heartbeat slowed, which in turn caused the loss of consciousness. As a. result of the automobile accident, Claimant suffered a comminuted intertrochanteric fracture of his right hip. However, during the course of Claimant’s treatment in the hospital, his condition deteriorated and he additionally suffered a right-sided hemisphere infarction and a perforated transverse colon secondary to ischemia, which ultimately caused the need for an ileostomy.
Claimant eventually returned to work for the Employer for a short period of time, but testified he could not do his regular job and that when the county ran out of “busy work” for him to do, he eventually stopped working on January 14, 1992. He thereafter began looking for work, introducing into evidence wage loss request forms from July 26, 1992, through January 9, 1993. The county and Gallagher-Bassett denied benefits on the basis that Claimant’s condition was related solely to a preexisting or idiopathic disease. The judge of compensation claims agreed, rejecting Claimant’s argument that his act of driving constituted an increased hazard which aggravated the injuries he suffered after he passed out and caused the accident. Significantly, the judge ruled that the question “is not whether one part of the claimant’s job poses a hazard greater than other activities on the job; rather, the question is whether an aspect of the claimant’s job has a hazard greater than that found in his non-employment life.” In so ruling, the judge accepted the county’s argument that since Claimant spent more than half of his driving time for personal reasons rather than for work-related reasons, Claimant’s employment neither contributed to the risk of injury nor aggravated the injuries Claimant sustained in the motor vehicle accident.
As a preliminary matter, Claimant requests this court to rule on whether the judge’s finding that Claimant suffered from an idiopathic condition is based on competent and substantial evidence. A careful review of the record reveals that it is, and therefore that portion of the judge’s order is affirmed. However, we agree with Claimant that the judge erred as a matter of law in ruling that Claimant’s accident and resultant injuries did not arise out of his employment.
A compensable injury under the Florida Workers’ Compensation statute must “arise out of’ employment. See §§ 440.02(1) and (16), and 440.09(1), Fla.Stat. (1989). The supreme court has ruled, however, that injuries caused by risks or conditions personal to the claimant “do not arise out of the employment unless the employment contributes to the risk or aggravates the injury.” Foxworth v. Florida Industrial Commission, 86 So.2d 147, 151 (Fla.1955). Specifically, “[t]he employment in some manner must contribute an increased hazard peculiar to the employment.” Id. In addition, this court has held that an injury caused by an idiopathic condition “arises out of’ employment when the employment exposes the claimant to conditions “which the claimant would not normally encounter during his non-employment life.” Medeiros v. Residential Communities of America, 481 So.2d 92, 93 (Fla. 1st DCA 1986).
In support of the denial of benefits, the county directs our attention to a number of decisions from the Florida Supreme Court which, it submits, show that the court favors strictly limiting the instances wherein acci *781 dents caused by idiopathic conditions can be held compensable. The county argues that the supreme court in recent years has largely distanced itself from its earlier holding in Protectu Awning Shutter v. Cline, 154 Fla. 30, 16 So.2d 342 (1944), wherein it found compensable an accident which caused mortal injuries when the employee fell and struck his head on a concrete floor during the course of his employment, even though the fall was precipitated by a preexisting heart condition. The eases upon which the county principally relies to support its argument include Foxworth v. Florida Industrial Commission (holding that Cline represents the outer limits of the doctrine); Federal Electric Corp. v. Best, 274 So.2d 886 (Fla. 1973) (death benefits denied following the employee’s skull fracture, caused as a result of the employee’s epileptic seizure); Southern Convalescent Home v. Wilson, 285 So.2d 404 (Fla.1973) (affirming denial of benefits and holding injuries suffered by claimant following fall caused by epilepsy arose from a risk or condition personal to him, and did not arise out of his employment); and Southern Bell Telephone and Telegraph Company v. McCook, 355 So.2d 1166 (Fla.1977) (upholding denial of benefits and ruling that it would not permit the Industrial Relations Commission to convert the workers’ compensation statute into a mandatory general health insurance policy). The county also strongly relies' on the supreme court’s latest decision regarding idiopathic falls in Leon County School Board v. Grimes, 548 So.2d 205 (Fla. 1989). Therein, the court declined to broaden the purpose of the Workers’ Compensation Act to allow recovery for any injury that might occur in the workplace, including injuries arising out of conditions personal to the claimant which are not caused or aggravated by the industry. While expressing its sympathy for the claimant Grimes (who fractured her ankle when the leg brace she had been wearing since childhood gave way upon her arising from her desk), the court expressly declined to adopt the actual-risk doctrine which would have allowed recovery in that case.
We have thoroughly reviewed the cited cases, and agree that it is a difficult task to reconcile the holdings in some of them with the result in Cline. The cases relied on by the county are primarily idiopathic “fall” cases involving chance falls to the level floor, or falls intercepted by nearby office furniture; which circumstances traditionally have been considered “controversial” because the effects of the fall are believed to be “no different from what they presumably would be at any other place where the employee might happen to be when the seizure occurs.” See 1 Larson, The Law of Workmen’s Compensation § 12.12, at p. 3-356 (1984). As a result, these eases have been treated differently from other idiopathic “fall” cases where the “employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle (emphasis added).” Id. at p. 3-355. As Professor Larson'observed:
Awards are uniformly made when the employee’s idiopathic loss of his faculties took place while he was in a moving vehicle, as in the case of a delivery man whose job required him to be at the wheel of a truck and who “blacked out” during an asthmatic attack and went into the ditch, and of an employee who was on a motor scooter when he lost consciousness. It seems obvious that the obligations of their employment had put these employees in a position where the consequences of blacking out were markedly more dangerous than if they had not been so employed. [Footnote omitted.]
Id. at pp. 3-356-57.[1] See also, Legakis v. Sultan & Sons, 383 So.2d 938 (Fla. 1st DCA *782 1980) (observing that common examples of employment conditions increasing the risk to employees include when the employee is required to use a motor vehicle during working hours). We find this reasoning to be sound.
Florida has long held that an automobile is a dangerous instrumentality when operated upon the public highways. See Ingram v. Pettit, 340 So.2d 922 (Fla.1976). If a claimant is required by his employer to operate a dangerous instrumentality as part of his employment, then his employment subjects him to an activity which increases the risk of an injury when an accident is caused by an idiopathic, or preexisting, condition, should such condition manifest itself during the employment. For this reason, we disapprove the judge’s ruling that the length of time Claimant used his vehicle for personal, as opposed to work-related, reasons controls the outcome of this case. Claimant’s employment required him to operate a dangerous instrumentality on the public highways. That is what he was doing when the accident occurred. As a result, Claimant’s employment obligations placed him in a position where the consequences of his losing consciousness were more dangerous and likely to result in more serious injury. In short, his employment clearly created a special and increased hazard contributing to the risk of aggravating any injury precipitated by his preexisting condition. Cf Lovett v. Gore Newspapers Company, 419 So.2d 306 (Fla. 1982) (tiled concrete floor and requirement that the claimant work two hours beyond her normal shift despite her protestations that she was feeling ill were factors that presented a special and increased hazard to the claimant’s pre-existing back condition and fall was held to be a compensable accident). Under these circumstances, it was error to deny Claimant benefits simply because it was shown that he also operated his automobile for non-employment reasons.[2]
The order is REVERSED and this cause is REMANDED for further proceedings.
ERVIN, J., and SMITH, LARRY G., Senior Judge, concur.

. Employing a similar analysis to idiopathic "fall” cases, a number of other jurisdictions have found compensable injuries caused while the employee was in a moving vehicle. See, e.g., Bennett v. Wichita Fence Co., 16 Kan.App.2d 458, 824 P.2d 1001 (1992) (holding that the employee's act of driving the employer's vehicle in the course of his employment subjected the employee to the additional risk of travel, and that while the seizure was personal to the employee, the risk of travel arose out of the employment and the two concurred to produce the injuries); Williams v. City of Gallup, 77 N.M. 286, 421 P.2d 804 (1966) (employee's use of a motor scooter for work purposes increased hazard of fall, thus making the additional injuries compensable when em *782 ployee lost consciousness while on scooter); Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965) (compensation awarded under increased-risk theory when employee suffered an epileptic seizure and car he was driving went into a skid); Watson v. Grimm, 200 Md. 461, 90 A.2d 180 (1952) (idiopathic fall held compensa-ble when fall was from running board of truck); Tapp v. Tapp, 192 Term. 1, 236 S.W.2d 977 (1951) (compensation awarded when deliveryman, whose job required him to be at the wheel of a truck’ "blacked out” during an asthmatic attack and went into a ditch).

. We distinguish the instant circumstances from those in Medeiros v. Residential Communities of America, 481 So.2d 92, wherein we upheld the denial of benefits on the basis that the claimant's employment did not expose her to conditions she would not normally encounter in her non-employment life. Therein, the claimant became dizzy (a symptom of which she had been complaining since an earlier non-compensable accident) and fell on a stairway while making a deliveiy for her employer. We observed that there was no evidence that the stairway in any way contributed to the risk of injury.