**ROBERTO, In re.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24554.   Decided June 5, 1958.

Harrison, Spangenberg & Hull, for petitioner.
Jones, Day, Cockley & Reavis, Thomas P. Mulligan, of Counsel, for respondent.

## OPINION

By HURD, J:

The petitioner, Dr. Daniel P. Roberto, a practicing physician in the City of Cleveland, has invoked the original jurisdiction of this court for the purpose of obtaining a writ of Habeas Corpus to release him from technicaɪ arrest on a mittimus issued for contempt of a notary public because of his refusal to answer certain questions propounded to him during the course of a hearing by way of deposition in two cases now pending in the Court of Common Pleas of Cuyahoga County.  The principaɪ case is a suit by Katherine Nykowski for personal injures alleged to have been sustained as a result of the negligence of the defendant,

Ohio Bell Telephone Company, arising from an automobile accident. The second suit is by her husband for alleged loss of his wife's services due to the injuries sustained by her. The arrest is technical only because the physician has been placed in the constructive custody of plaintiff's counsel pending a decision on the questions of law here presented.

The record shows that the petitioner is plaintiff's physician and that his refusal to answer certain questions is based entirely upon his claim of privilege due to the physician-patient relationship.

The record shows that on July 25, 1956, the deposition of plaintiff, Katherine Nykowski, was taken by her for the sole purpose of perpetuating her testimony to be used, if necessary, in both of the actions pending in the Court of Common Pleas. In this deposition she voluntarily testified that after she engaged the petitioner as her attending physician, he examined her, prescribed medicine and rest; that she related her complaints to him and he continued to prescribe medicine and that eventually he referred plaintiff to a heart specialist, Dr. Henry A. Zimmerman, who examined her thoroughly and reported his findings in writing to the petitioner; that she did not testify that she had received any diagnosis or prognosis from her physician and that she had no knowledge as to his findings or those of the heart specialist.

Sometime later the defendant proceeded to take the testimony of the petitioner by deposition with no waiver of privilege obtained. It was at this time that the petitioner exercised his privilege on behalf of his patient and refused to answer any questions relating to matters to which his patient had not testified.

The record of the deposition shows that the plaintiff testified fully as to her injuries, symptoms and complaints—headaches, heart pounding, difficulty in breathing, inability to sleep, sweating, nausea, lack of appetite and pain in neck, shoulders, and arms; that by reason thereof, she consulted the petitioner sometime in June of 1955, who thereupon examined her and prescribed certain medication and rest; that she continued to consult the petitioner and was still under his care July 21, 1956, the date of her deposition; that the petitioner referred her to several other doctors for treatment when she would contact him at night in emergency situations; that prior to the accident she was employed and active and never experienced the symptoms which have existed since the accident.

In the deposition hearing, the petitioner testified as to the dates on which he had seen the plaintiff, the complaints which she communicated to him, the fact that he made an examination of the heart, lungs, eyes, ears, throat, neck, head, chest and abdomen; that the examination of the heart was by stethoscope and by palpation; that he made subsequent examinations directed principally to the neck and the chest, including the heart; that he made certain findings; that he prescribed certain drugs and rest; that initially he made a presumptive diagnosis of her condition but later arrived at a firm diagnosis by reason of the effect of the drugs on her condition, and that this diagnosis was confirmed by a Basal Metabolism Rate test made at St. John's Hospital; that

he referred the plaintiff to the heart specialist in order to determine the relationship of his findings to the automobile accident and that after examination, Dr. Zimmerman made a written report to him. The petitioner, although testifying concerning communications made to him by his patient, refused throughout the deposition to state his findings and to state his diagnosis. He took the position that he could not testify to anything more than what his patient had testified to in her deposition.

Counsel representing both parties, by way of brief and by oral argument, have cited and discussed the case of In re Loewenthal, 101 Oh Ap 355, 134 N. E. 2d 158, decided by this court May 3, 1956, in which we held as appears by the first syllabus as follows:

"1. A person testifying for his own benefit as to his injuries and communications made by him to his physician and the physician's treatment and advice to him in a deposition hearing instituted by him for the purpose of perpetuating his testimony in her personal injury suit, thereby waives the privilege against the physician's testimony as to the same matters already disclosed by him, and in such case the physician may be compelled to testify, by deposition, at the instance of the defendant, on the same subject as provided by §2317.02 R. C."

In the Loewenthal case, the physician refused to answer any questions. The issue presented was whether or not the physician could be compelled to testify by way of deposition in a case where the patient had voluntarily testified by deposition solely for her own benefit and for the purpose of perpetuating her own testimony. In that case, we followed the words of the statute to the effect that a physician, when called to testify by deposition at the instance of the defendant, was required to "testify on the same subject" as provided by §2317.02 R. C.

However, the issues in the case at bar require a further delineation of what is meant by the words "on the same subject" as provided by the statute where plaintiff voluntarily testifies in her own behalf in order to perpetuate testimony by deposition and presents the question as to the extent the patient waives the physician-patient privilege by her voluntary testimony. The pertinent parts of §2317.02 R. C., read as follows:

"The following shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient, but the attorney or physician may testify by express consent of the client or patient, or if the client or patient be deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject." (Emphasis added.)

In the Loewenthal case, we adverted to the proposition that there was no physician-patient privilege at common law and hence, being in derogation thereof, the privilege should be strictly construed against the person asserting it. Citing Weis v. Weis, 147 Oh St 416, 72 N. E. 2d, 245, 169 A. L. R. 668; Clifford v. Denver & Rio Grande Rd. Co., 188 N. Y. 349,

80 N. E. 1094; Munzer v. Swedish American Line, 35 F. Supp. 493.

For the purpose of determining the question here presented, we shall consider the Ohio decisions which relate generally to the question of privilege between physician and patient, attorney and client, which are applicable to the case at bar.

While at common law, there was no physician-patient privilege, there was a privilege which extended to the relationship of attorney and client irrespective of statute. For this reason, we think the case of Spitzer v. Stillings, 109 Oh St 297, 142 N. E. 365, while involving the attorney and client relationship, may be considered by way of analogy to have a direct bearing on the issue here presented. Syllabus two of that case provides:

"2. By virtue of §11494 GC (§2317.02 R. C.), if a party voluntarily testifies as a witness in his own behalf any attorney to whom communications may have been made by such party in the relation of attorney and client, may be compelled to testify upon the same subject concerning which such party has voluntarily offered testimony, even though no reference was made in the testimony of such party to any communications having been made. * * *"

At page 301, Chief Justice Marshall, speaking for a unanimous court, declared:

"* * * It is contended, however, by counsel for Spitzer & Coats, that the statute refers to the subject of the communications between client and attorney, and not to the subject of the controversy. The answer to this proposition is that, if it is sought to limit the scope and application of the word 'subject,' such limitation should have been defined by the Legislature itself, and that, in the absence of any limitation, it should be taken in an unlimited and unrestricted sense. If the Legislature meant the word 'subject' to be confined to the subject of the communications between the client and attorney, it could easily have so stated, and, in the absence of that limitation, it is more probable that it was intended to include the subject matter of his testimony generally. * * *"

Another case of importance which does involve the physician-patient relationship is Baker v. Industrial Commission, 135 Oh St 491, 21 N. E. 2d 592, the syllabi of which read:

"1. Under §11494 GC (§2317.02 R. C.), privileged communications between patient and physician may be either (1) by exhibition of the body to a physician for examination or treatment, or (2) oral or written communications between patient and physician. The physician may not testify in respect to either unless there is express consent by the patient or a waiver in reference thereto.

"2. Where a patient voluntarily testifies that his right leg was free from boils and scaly condition before a certain injury but that thereafter it was all swollen up, sore and scabby, and that he was sent to a certain physician, a skin specialist, for treatment, there is a waiver in respect to the condition of his right leg and the physician may therefore testify on that subject.

"3. Where such patient does not voluntarily testify in respect to any verbal communications between himself and the physician, there

is no waiver in regard to any such verbal communications so as to permit the physician to testify on that subject." (Emphasis added.)

It will be noted from the foregoing that privileged communications between patient and physician may be by exhibition of the body to the physician for examination or treatment as well as by oral or written communications between physician and patient and that a physician may not testify in respect to either unless there is a waiver in reference thereto. It will be noted from syllabus two that where a patient voluntarily testifies concerning his physical condition that thereby there is a waiver in respect to the condition concerning which he testified. As will be noted by syllabus three, where the patient does not voluntarily testify to any verbal communications between himself and the physician, there is no waiver of any verbal communications so as to permit the physician to testify on that subject. We do not have this question here because the patient has voluntarily testified as to verbal communications and the petitioner has done likewise.

In **Metropolitan Life Ins. Co. v. McKim, 54 Oh Ap 66, 6 N. E. 2d 9,** syllabus three provides as follows:

"3. Where the insured voluntarily testifies as to physicians having examined him, it is error to refuse testimony of such physicians offered by the insurer, as examination of the insured's body is a communication to his physician, and the insured in testifying waived his privilege of the communication secured to him by §11494 GC (§2317.02 R. C.)."

In **Cuthbertson v. Cincinnati Union Terminal, 103 Oh Ap 385, 145 N. E. 2d 467,** it was held, as provided by syllabus three, as follows:

"3. Under the provisions of §2317.02 R. C., where a plaintiff seeking damages for personal injuries testifies fully as to his physical condition and mentions a physician who treated him and the treatment administered, there is a waiver with respect thereto, and such physician may testify."

It is our conclusion, upon a review of the decisions in Ohio, some but not all of which have been cited and quoted, that the rule should be, and this court so holds, that when a patient testifies voluntarily for the purpose of perpetuating testimony by way of deposition as has been related herein, but does not testify as to the physician's findings upon examination and his diagnosis of her condition, whether or not such finding and diagnosis are within her knowledge, that the physician can be required to answer inquiries relating thereto because the patient waived the privilege attaching thereto by testifying generally to her condition and treatment. While this question has not been exactly presented before, we believe this holding is consonant with and within the intendment of the cases reviewed. This, therefore, would require Dr. Roberto, in the instant case, to answer questions concerning his findings upon examination of the plaintiff and his diagnosis of the condition of the patient.

Coming now to consider the written report made by Dr. Zimmerman to Dr. Roberto, we conclude that the contents of the report in his hands are in the nature of mere hearsay and that, therefore, such evidence in his hands is incompetent; and there is no obligation upon him to disclose the contents thereof. It is well settled that the hearsay rule,

6

though frequently applied to oral statements, is not confined thereto but extends as well to written statements. See 21 O. Jur. (2d) 311, Sec. 296. See also, Hurd and Long, Ohio Trial Evidence, page 252, Sec. 13.2, the case of Cleveland, C., C., etc. R. Co. v. Ullom, 20 C. C. 512, 11 C. D. 321 (affirmed without opinion 64 Oh St 582, 61 N. E. 1148). Dr. Roberto cannot testify as to examinations and findings made by Dr. Zimmerman, either oral or written nor could he be cross-examined with respect to such findings.

We conclude, therefore, that the writ of habeas corpus should be denied as to all questions concerning examination, diagnosis, and treatment, out should be allowed insofar as it might extend to the petitioner's refusal to furnish the defendant with a copy of the written report of the heart specialist.

A journal entry may be drawn in accordance with this opinion. Exceptions allowed.

SKEEL, PJ, KOVACHY, J, concur.