The STATE of Texas, Appellant,

v.

Pervis Joseph COMEAUX, Appellee.

No. 318–90.

Court of Criminal Appeals of Texas, En Banc.

July 3, 1991.

---

**48**

Christopher M. Gunter, Austin, for appellee.

Ken Oden, County Atty., Alia Moses, Asst. County Atty., Robert Huttash, State's Atty., and Carl E.F. Dally, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Pervis Joseph Comeaux, appellee, charged with driving while intoxicated, TEX.REV.CIV.STAT.ANN. art. 6701*l*-1, filed a pretrial motion to suppress the result of a blood alcohol content analysis conducted upon a sample of his blood. He argued that the blood sample was seized and analyzed in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 9 of the Texas Constitution. The trial court granted appellee's motion and suppressed the State's evidence of appellee's blood alcohol content. The State appealed from this ruling, Art. 44.01 V.A.C.C.P. A panel of the Court of Appeals at Austin affirmed the trial court's suppression of the evidence. The Court of Appeals held that the appellee did not consent to the State's seizure and use of his blood sample. The court also held that there was state action in the seizure and analysis of the blood sample. *State v. Comeaux*, 786 S.W.2d 480 (Tex.App.—Austin 1990).

We granted the State's petitions for discretionary review to decide whether, under these facts, the State's seizure of appellee's blood sample amounted to state action and violated appellee's right against unreasonable search and seizure. U.S.CONST. amend. IV and XIV; TEX.CONST. art. 1, sec. 9. The State specifically requests that we review that portion of the court's of appeals opinion which appears to base its finding of state action upon the fact that the chemical analysis of appellant's blood was conducted in a state pathology laboratory. We affirm the holding of the Court of Appeals. We hold that there was state action in the seizure and analysis of appellee's blood in violation of appellee's right to be free from unreasonable search and seizure.

To make a determination of whether there was state action necessitates a recital of the pertinent facts herein. Appellee was driving home from a party that he had catered when a car, travelling toward appellee's van, crossed over into his lane and hit his van head-on. The driver of the car hitting appellee's van was killed. Appellee sustained minor injuries and was taken to Brackenridge Hospital.

Department of Public Safety [D.P.S.] Trooper Chester L. Dixon was called to the scene of the accident. At some point after he ascertained that appellee would be taken to the hospital, he radioed the D.P.S. dispatcher and requested that a blood sample be obtained from appellee. The dispatcher contacted an Austin police officer, Craig Jackson, who was on duty at Brackenridge hospital, and informed him of the request. Trooper Dixon testified that at the time he called the dispatcher he had no reason to suspect that appellee had consumed any alcohol. Dixon also testified that he did not want appellee placed under arrest, nor did he believe that he had probable cause to do so. In fact, Dixon testified that prior to his receipt of the blood alcohol content analysis result, he did not believe that appellee was intoxicated at the time of the accident.

While appellee was at the hospital, a sample of his blood was ordered taken by

appellee's attending physician. This sample was taken in order to provide appellee with medical treatment. (The tests performed on appellee's blood as ordered by the physician did not include a blood alcohol content analysis.)

Officer Jackson requested a portion of appellee's blood sample from the nurse on duty. She refused to give him any of appellee's blood without authorization. Officer Jackson then presented her with a form entitled "Statutory Authorization: Mandatory Blood Specimen." This form stated that the appellee was under arrest (which in fact he was not), required appellee to give a sample of his blood, and ordered the nurse to acquire the sample. After receiving the form, the nurse provided Officer Jackson with the sample of appellee's blood.

The Supreme Court of the United States has held that obtaining a blood sample from an accused falls within the Fourth Amendment's protection of persons against unreasonable searches and seizures[1]. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Texas constitutional protection against unreasonable searches and seizures[2] has been held to be at least as extensive as the Fourth Amendment. *See* and *compare Bower v. State,* 769 S.W.2d 887 (Tex.Cr. App.1989), *cert. denied* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *Brown v. State,* 657 S.W.2d 797 (Tex.Cr.App.1983). *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr. App.1991). We have specifically held that under Article 1, Section 9, of the Texas Constitution "the taking of a blood sample is a search and seizure." *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App.1978), *cert. denied* 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979), *reh. denied* 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 124 (1979);

*Aliff v. State,* 627 S.W.2d 166 (Tex.Cr.App. 1982).

The State contends, however, that the seizure of appellee's blood does not fall within the purview of Article 1, Section 9, or the Fourth Amendment because of the absence of state action.

■ The United States and Texas constitutional protections against unreasonable search and seizure apply only when the government conducts the search and/or seizure. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *U.S. v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Vargas v. State,* 542 S.W.2d 151 (Tex.Cr.App.1976) *cert. denied* 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 562 (1977). However, "[a]lthough the Fourth Amendment does not apply to a search and seizure, even an arbitrary one, effected by a private party on his [or her] own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner v. Railway Labor Executives Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

■ To determine whether a private party acted as an instrument or agent of the government, the Supreme Court has advocated using the test of whether "in light of all the circumstances, the private citizen must be regarded as acting as an instrument or agent of the state." *Coolidge v. New Hampshire,* 403 U.S. 443, 488, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971). The United States Courts of Appeals for the Ninth and Sixth Circuits look to whether the private actor had a legitimate independent motivation for taking the action which is challenged. *See U.S. v. Walther,*

---

1. The Fourth Amendment provides:

   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

   U.S. Const. IV amend.

2. Article 1, section 9 provides:

   The people shall be secure in their persons, houses, papers, and possessions, from all unreasonable searches and seizures, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

   TEX.CONST. art. 1, sec. 9.

652 F.2d 788, 792 (9th Cir.1981); *U.S. v. Howard,* 752 F.2d 220, 227 (6th Cir.), *cert. denied* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). If the seizure was independent of the government, even if government officials were present when the seizure occurred and were interested in the fruits of the seizure, the private party is not deemed to have acted as an agent of the government. *See U.S. v. Attson,* 900 F.2d 1427 (9th Cir.1990).

▪ In this case the doctor was acting solely as appellee's attending physician when he ordered that the blood be drawn from appellee. The doctor testified that he ordered a blood sample to be taken so that he could get a "complete blood count." The State did not request the doctor to take the sample. The doctor wanted the blood only so that he could provide medical treatment for the appellee, not for any governmental purpose. Thus, the doctor was acting on his own initiative and had a legitimate independent motivation for his action. He was not acting as an instrument or agent of the State. Therefore, the Fourth Amendment to the United States Constitution and Article 1, Section 9, of the Texas Constitution do not apply to his actions in this case. *U.S. v. Jacobsen,* supra; *Vargas v. State,* supra.

The State would have us stop at this point and hold that since the blood sample was seized by a private party for solely private reasons, the protections against unreasonable searches and seizures are not implicated. The State offers authority from another jurisdiction in support of this position.[3]

Conversely, appellee argues that we must proceed further and look at how the State obtained his blood sample. Simply put, he asserts that the State acted when Officer Jackson took the blood sample from the nurse. He argues that this action by an officer of the State invokes the protections of the Fourth Amendment and Article 1, Section 9. Since a warrant was not procured and the State did not establish that an exception to the warrant requirement was applicable, appellee maintains that the evidence was correctly suppressed and the holding of the Court of Appeals should be affirmed.

We agree with appellee that the analysis does not end at the point where the blood sample was initially taken by the medical personnel.

▪ The State complains that the Court of Appeals, in finding state action, focused on the fact that the blood alcohol content analysis was performed at the Texas Department of Public Safety laboratory. In addressing the issue of state action, the Court of Appeals limited its analysis to the following:

> In cases where the courts determined whether there was state action in administering blood-alcohol tests, however, the private party performed the actual test. *Weaver v. State,* 721 S.W.2d 495 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd); *Hayes v. State,* 634 S.W.2d 359 (Tex.App.—Amarillo 1982). Here, the

---

**3.** The State relies on two early Pennsylvania cases, *Commonwealth v. Tanchyn,* 200 Pa.Super.Ct. 148, 188 A.2d 824 (1963) (held: no Fourth Amendment violation where seizure was made by private individuals, to wit: hospital personnel) and *Commonwealth v. Gordon,* 431 Pa. 512, 246 A.2d 325 (1968) (held: no Fourth Amendment violation where police obtained the blood from hospital workers who extracted it for medical purposes).

In response to these cases relied upon by the State, appellee directs us to a more recent case from the same court, *Commonwealth v. Cieri,* 346 Pa.Super.Ct. 77, 499 A.2d 317 (1985). There, hospital personnel withdrew a blood sample for routine medical purposes, then the officer took the blood from the hospital personnel. The court wrote:

[T]he search proceeded in two distinct stages. Had nothing further occurred, [after the hospital personnel withdrew the blood sample] .. the withdrawal of appellant's blood would have been a 'private search', not implicating appellant's fourth amendment rights. When, however, [the nurse] handed appellant's blood to [the officer], appellant's fourth amendment rights were put at issue ... We must therefore, decide whether appellant's fourth amendment rights were violated by the ensuing test for blood alcohol level.

*Id.* 499 A.2d at 321. (The court ultimately held that since the officers had probable cause and exigent circumstances were present, the Fourth Amendment was not violated.)

test was performed by the Department of Public Safety's Lab. Although the nurse already had drawn blood, the officer seized that blood and ordered a test that the medical personnel did not request or require. It is the result of this test that was suppressed. Thus, there was state involvement in the search. *State v. Comeaux,* 786 S.W.2d 480 (Tex. App.—Austin 1990).[4] While the question of state versus private testing may be dispositive of the state-action issue in an appropriate case, it is not the determining factor here.

■ The Court of Appeals went further than the State suggests, however, and also based its finding of state action on the fact that "the officer" seized appellee's blood sample from the nurse. It is at this point in the chronology of the facts that the state became inextricably involved as an active participant.

Officer Jackson initiated contact with the nurse and requested appellee's blood sample from her. She refused to give the sample to him until he presented her with a form entitled "Mandatory Authorization." The nurse turned the sample over to Officer Jackson because he demanded it under an assertion of mandatory authority. She did not have an independent motive to turn the sample over to him. Her conduct was neither in the interest of or for the benefit of the hospital, nor in the interest of or for the benefit of the defendant. She was acting solely at the behest of police authority.

■ In order to present a State or Federal constitutional claim based on unlawful search and seizure, the appellee must be within the purview of constitutional protection. He must establish that he had a legitimate expectation of privacy in the invaded place or property, and that this expectation of privacy is one that *society* is prepared to accept as reasonable. *Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979).

■ Here, we are presented with the question of whether an accused, after voluntarily giving a sample of his blood to a third party, maintains a legitimate expectation of privacy in that sample sufficient to allow him to object to what the third party does with the blood sample thereafter.[5]

■ To determine if the accused has made a showing of a legitimate right of privacy, courts may look to the totality of the circumstances. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Bower v. State,* 769 S.W.2d 887 (Tex.Cr.App.1989). However, "legitimation of expectations of privacy by

---

4. The Court of Appeals relies on *Hayes v. State,* 634 S.W.2d 359 (Tex.App.—Amarillo 1982) and *Weaver v. State,* 721 S.W.2d 495 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd.). The Court's interpretation of those cases, however, is somewhat misleading. In *Hayes* the court found that there was no state action after setting forth the facts in a sketchy fashion. In that case a medical technician obtained a blood sample from appellant at the doctor's request. A lab technician then carried out the doctor's orders and ran a blood alcohol content analysis test. At some point thereafter, the opinion states neither when nor how, the state obtained the results. The court held that, even if they had found state action, the search and seizure would not have violated appellant's rights since the officers had probable cause and exigent circumstances. Therefore, the Hayes opinion does not establish that the key factor in determining state action depends on who conducts the blood alcohol content analysis.

The the court in *Weaver* does not refer to who conducted the blood alcohol content analysis.

The court did hold that, even though the state conducted an unlawful search and seizure of appellant's blood, the hospital personnel also did a blood alcohol content analysis for medical purposes. Since that result was also admitted into evidence at the trial, the admission of the state's result was harmless.

5. The dissent alleges that the "question of whether appellee has a privacy interest in blood that he has relinquished to medical workers is superfluous if the police conduct in obtaining the specimen is not proscribed by the Fourth Amendment." Adopting the State's argument, the dissent urges that the analysis should end once the blood is removed from appellant's body. Appellee alleged that the police had no right to take his blood from the nurse, and we have found that the conduct of the police in obtaining the blood sample from the nurse constituted State action. *Cf. Walter v. U.S.,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

law must have a source outside of the Fourth Amendment either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 144 n. 12, 99 S.Ct. 421, 431 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978).

The record reflects that appellee gave a sample of his blood in order to receive medical help only; he had no intention of allowing that sample to be used for any other purpose. Common sense dictates, in this age of blood testing for everything from HIV infection to drug use, that a person does not assume that, by giving a sample of blood for private testing, that blood sample could then be submitted to the State, or to any other person or entity, for a purpose other than that for which it was given.

Indeed, appellee's attending physician, testifying at the pretrial hearing, told the court that if someone were to walk up to him and request a portion of his patient's blood, even if it had already been drawn, that would be "violating someone's body cavity and you have to have permission to do that ... The patient, as I understand, usually has to sign a release that says he gives permission for blood to be drawn from him by—for DPS purposes."

The physician also testified that the consent form which a patient signs prior to treatment creates an agreement between the patient and the medical staff. Inherent in that agreement is the expectation on the part of the patient that the medical staff does not then gain the right to do whatever they wish with what the patient has provid-

ed to them. The law in Texas prohibits a medical professional or hospital employee from releasing any information about a patient.[6] The Medical Practice Act, V.A.T.C.S., art. 4495b, sec. 5.08 provides:

(b) Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed except as provided in this section....

(g) Exceptions to confidentiality or privelege in court or administrative proceedings exist:

(6) in any criminal investigation of a physician ... This subsection does not authorize the release of any confidential information for the purpose of instigating or substantiating criminal charges against a patient;

(h) Exceptions to the privilege of confidentiality, in other than court or administrative proceedings, allowing disclosure of confidential information by a physician, exist only to the following:

(1) governmental agencies *if the disclosures are required or authorized by law;* (emphasis added).[7]

We have written in *Chapa v. State*, 729 S.W.2d 723, 728 fn. 3 (Tex.Cr.App.1987) that:

[w]hether a particular expectation of privacy is one society is willing to recognize .. is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular context in which appellant harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to

---

6. We note that appellee, in his motion to suppress, also contested the seizure of his blood sample under the Texas exclusionary rule. Article 38.23, V.A.C.C.P. Although the trial court did not file findings of fact, it is possible that the trial court could have found that the blood sample was obtained in violation of State law and excluded the blood alcohol content results pursuant to Article 38.23, V.A.C.C.P. *Cf.* Concurring opinion by Judge Campbell at p. 54, n. 1 (relying on Art. 4495 § 5.08, in effect at the time of the offense but which was deemed repealed as it related to criminal cases and criminal law

matters by order of this Court effective September 1, 1986. See now Tex.R.Crim.Evid. 509). We do not address this alternative ground, however, as it was not presented to this Court for review. *See Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Cr.App.1986) (Clinton, J. dissenting); *Angel v. State*, 740 S.W.2d 727 (Tex.Cr.App.1987).

7. This statute is cited as "a social, or 'legislative fact', helpful in resolution of the constitutional question whether in the context proven, society recognizes the asserted expectation of privacy as a reasonable one." *Chapa v. State*, 729 S.W.2d 723, 728, fn. 3 (Tex.Cr.App.1987).

sanction that expectation as reasonable or legitimate.

There, this Court determined that society recognized that a person's expectation of privacy in the interior of a taxicab was legitimate. We based that determination, in part, on the existence of city ordinances which established the right to privacy in a taxicab. "A clearer indicium of society's preparedness to accept as reasonable an expectation of privacy ... could hardly be imagined." *Id.*

Appellee has made a sufficient showing to establish that he had a legitimate expectation of privacy in the blood sample that he gave to the hospital personnel for purposes of medical treatment. Additionally, we recognize society's regard for this expectation, as evidenced by the Texas Medical Practice Act cited above.[8]

Having determined that appellee falls within the protection of the constitutional provisions against unreasonable search and seizure, we must now determine whether the Court of Appeals erred in affirming the trial court's ruling that the seizure was unlawful and the blood alcohol content analysis results were inadmissible.[9]

■ Although *Schmerber v. California*, supra, proclaims that a search and seizure of a blood sample is protected by the Fourth Amendment, it is only those searches and seizures "which are not justified in the circumstances, or which are made in an improper manner" that violate the Fourth Amendment. *Id.* 86 S.Ct. at 1834. Where the officers have probable cause, exigent circumstances, and a reason-

able method of extraction, then the search and seizure is not unreasonable and does not violate the Fourth Amendment. This Court has followed *Schmerber* by requiring probable cause, exigent circumstances, and a reasonable method of extraction to be shown before a warrantless search and seizure of a blood sample will be held to be reasonable. See *Aliff v. State*, 627 S.W.2d 166 (Tex.Cr.App.1982); *Smith v. State*, 557 S.W.2d 299 (Tex.Cr.App.1977); *Escamilla v. State*, 556 S.W.2d 796 (Tex.Cr.App.1977); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978), *cert. denied* 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979), *reh. denied* 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 124 (1979).

■ Here, according to their own testimony, the officers did not have probable cause. Nor were there exigent circumstances, since the blood sample had been removed from appellee's body at or near the time of the accident. The warrantless search and seizure of appellee's blood violated his constitutional protection against unreasonable search and seizure. U.S.CONST. amend. IV and XIV; TEX. CONST. art. 1, sec. 9. Therefore, the exclusionary rule requires suppression of the result of the blood alcohol content analysis. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Article 38.23, V.A.C.C.P.

Accordingly we affirm the judgment of the court of appeals.

MILLER and WHITE, JJ., concur in the result.

---

8. Although it is true, as the dissenting opinion points out, that the United States Supreme Court has consistently held that there is no reasonable expectation of privacy in objects or information voluntarily turned over to third parties who subsequently release that object or information to government officials, it is also true that the Supreme Court has utilized the same test to determine whether a reasonable expectation of privacy exists which we utilize today. *Smith v. Maryland*, 442 U.S. 735, 743–744, 99 S.Ct. 2577, 2582, 61 L.Ed.2d 220 (1979); *Hoffa v. U.S.*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *U.S. v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *Couch v. U.S.*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *U.S. v.*

*White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. U.S.*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *Rakas v. Illinois*, 439 U.S. 128, 144 n. 12, 99 S.Ct. 421, 431 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978).

9. Article 38.23 provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Article 38.23, V.A.C.C.P.

CAMPBELL, Judge, concurring.

I write in concurrence because I believe that the plurality's application of the Fourth Amendment to resolve the search and seizure issues raised in the instant case is entirely unnecessary and likely incorrect. *See U.S. v. Attson,* 900 F.2d 1427, 1433 (9th Cir.1990) (Holding that no search or seizure occurred, under the Fourth Amendment, where a government doctor drew and analyzed Attson's blood for "purely medical reasons," and the doctor "did not intend to elicit a benefit for the government in its investigative or administrative capacity"). Rather I believe that the issues presented in this case can be adequately resolved under Texas statutory law.

At the time of the instant offense, under the Texas Medical Practice Act, communications between a physician and a patient in connection with any professional services, were privileged and could not be disclosed, subject to certain exceptions. Tex. Rev.Civ.Stat. art. 4495b § 5.08(a).[1]

In my view, the dispositive issue to be resolved is whether the term "communications," as used in art. 4495b § 5.08(a), can be broadly construed to include the transfer of a blood sample from a patient to a physician for purposes of analysis to be used in treating the patient. The meaning of "communications" as used in art. 4495b § 5.08(a) has never been clarified by this or any other court in Texas. An analysis of the legislative intent underlying the Medical Practice Act provides no guidance. Therefore, I would look to other jurisdictions that have previously construed similar statutes providing a privilege for physician-patient communications.

In *Metropolitan Life Ins. Co. v. McKim,* 54 Ohio App. 66, 6 N.E.2d 9 (1935), an Ohio Court of Appeals defined "communication" in the context of the Ohio code providing for a physician-patient privilege. § 11494, Gen.Code. A communication "may be not only by word of mouth, but also by exhibiting the body or any part thereof to the physician for his opinion, examination, or diagnosis, and that sort of communication is quite clearly within the statutes as is a communication by word of mouth." *McKim,* 6 N.E.2d at 12. In *McKim,* the patient was found to have communicated certain information to his physician when he exhibited his eyes to his physician for observation. *See also, In re Roberto,* 106 Ohio App. 303, 151 N.E.2d 37 (1958) ("Privileged communication between patient and physician may be by exhibition of the body to the physician for examination and treatment as well as by oral or written communication ... and a physician may not testify in respect to either unless there is a waiver"); *Baker v. Industrial Comm.,* 135 Ohio St. 491, 21 N.E.2d 593 (1939); *Moore v. Grandview Hospital,* 25 Ohio St.3d 194, 495 N.E.2d 934 (1986).

In *Williams v. City of Gallup,* 77 N.M. 286, 421 P.2d 804 (1966), the Supreme Court of New Mexico rejected a narrow view of the meaning of communication in connection with the physician-patient privilege.

"While communication includes the verbal communication of the patient to the physician, it also includes the information

---

1. Article 4495b § 5.08 provides in pertinent part:

(a) Communications between one licensed to practice medicine, relative to and in connection with any professional services as a physician to a patient, is [sic] confidential and privileged and may not be disclosed except as provided in this section.

\* \* \* \* \* \*

(g) Exceptions to confidentiality or privilege in court or administrative proceedings exist:

\* \* \* \* \* \*

(8) in any criminal prosecution where the patient is a victim, witness, or defendant. Records are not discoverable until the court

in which the prosecution is pending makes an in camera determination as to the relevancy of the records or communications or any portion thereof. Such determination shall not constitute a determination as to admissibility of such records or communications or any portion thereof.

Art. 4495 § 5.08 was deemed repealed as it related to criminal cases and criminal law matters by order of this Court effective September 1, 1986. See now Tex.R.Crim.Evid. 509.

The events that resulted in appellant's conviction for Driving While Intoxicated occurred on July 20, 1986. Thus, art. 4495b § 5.08 was still applicable to any "communications" made by appellant to his physician on that date.

or knowledge gained by observation and personal examination of the patient." *Id.* 421 P.2d at 806 (citing *Howard v. Porter,* 240 Iowa 153, 35 N.W.2d 837 (1949)). *See also, Matter of Doe,* 98 N.M. 442, 649 P.2d 510, 515 (App.1982).

In *Capps v. Lynch,* 253 N.C. 18, 116 S.E.2d 137 (1960), the Supreme Court of North Carolina found that the statute making "information" disclosed by a patient to a physician privileged, extended "not only to information orally communicated by the patient, but to knowledge obtained by the physician through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe." *Id.* 116 S.E.2d at 140 (citing *Smith v. John L. Roper Lumber Co.,* 147 N.C. 62, 60 S.E. 717, 718 (1908)).

The meaning of "communications" within the Iowa statute concerning privileged physician-patient communications was addressed in *Howard v. Porter,* 240 Iowa 153, 35 N.W.2d 837, 838 (1949).

> Although the prohibition of the statute is as to "communication," we early held it means the same as "information" and included not only the verbal communications of the patient to the physician but also the knowledge and information the physician gained by observation and personal examination of the patient in the discharge of his duties. *Prader v. National Masonic Accident Assn.,* 95 Iowa 149, 63 N.W. 601 (1895).

In *State v. Raymond,* 139 Vt. 464, 431 A.2d 453 (1981), the Supreme Court of Vermont interpreted the Vermont statute making privileged any information acquired in attending a patient in a professional capacity by a doctor, dentist or nurse. 12 V.S.A. § 1612(a). In *Raymond,* the court found that it was error to admit a nurse's statement that she smelled alcohol on the breath of a defendant charged with driving while intoxicated, as that information was privileged within the statute. The court concluded that "observations of a patient's medical or physical condition is [sic] just as much 'information acquired while attending [her] patient' as statements, admissions or

other utterances made by the patient to his nurse." *Id.* 431 A.2d at 455.

Under the New Jersey physician-patient privilege statute a "blood test is a confidential 'communication' ... since that term is defined as including information obtained by examination of the patient." *State, In the Interest of M.P.C.,* 165 N.J.Super. 131, 397 A.2d 1092, 1095 (1979) (construing NJSA 2A:84A–22.1(d)). The Supreme Court of New Jersey, Appellate Division concluded, however, that the privilege did not apply because the police had arrested the defendant and taken him to the hospital for a blood test.

Finally, the United States Court of Appeals for the District of Columbia Circuit interpreted § 14–308, D.C.Code 1940, to provide a broad physician-patient privilege in *Sher v. DeHaven,* 199 F.2d 777, 780 (D.C.Cir.1952).

> The statutory privilege extends not only to information orally given by the patient to the physician, but also to any information obtained by him in his professional capacity, which of course includes information obtained through his observation or examination of the patient as well as all inferences and conclusions drawn therefrom.

Although some of these statutes refer to "information" rather than "communications," I find this distinction is of marginal value given the tendency of various courts to broadly construe the extent of a general physician-patient privilege.

In the instant case, I would find that the extraction and transfer of blood by a physician from a patient (appellant) for the purposes of treatment, examination, or diagnosis fell within the meaning of "communications" as used in art. 4495b § 5.08(a). A patient's blood is certainly a part of his body and can only be examined after it is removed from the body. Thus, the transfer of blood to the physician for analysis or other medical procedure should be viewed as a communication. *See generally,* 8 Wigmore on Evidence § 2384 ("It is ... well settled that the data furnished *passively, through submission to inspection,* are equally within the [physician-patient] privi-

lege, whether the patient was himself aware or not of the existence of the specific data discovered") (emphasis original).

Furthermore, the exception to privilege contained within art. 4495b § 508(g)(8) is inapplicable in the instant case. *See* note 1 *supra.* At the time appellant's blood was transferred to his physician for analysis there was no criminal prosecution in which appellant was then a victim, witness, or defendant. Appellant was not charged with an offense until nearly two weeks after the police obtained a sample of his blood.

For the reasons stated above, I would affirm the judgment of the Court of Appeals. Accordingly, I concur only in the result reached in the plurality opinion.

BENAVIDES, J., joins.

McCORMICK, Presiding Judge, dissenting.

I dissent. The plurality finds that because appellee maintained "an expectation of privacy" in the blood specimen after such had been removed from his body, appellee can assert Fourth Amendment claims when the police seize the blood from the hands of a third party. This is analytically incorrect.

The Supreme Court has consistently held that a person has no legitimate expectation of privacy in objects or information that he voluntarily turns over to third parties who subsequently release them to authorities. See, e.g., *Smith v. Maryland,* 442 U.S. 735, 743–744, 99 S.Ct. 2577, 2581–2582, 61 L.Ed.2d 220 (1979); *United States v. Miller,* 425 U.S. 435, 442–444, 96 S.Ct. 1619, 1623–1625, 48 L.Ed.2d 71 (1976); *Couch v. United States,* 409 U.S. 322, 335–336, 93 S.Ct. 611, 619–620, 34 L.Ed.2d 548 (1973); *United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (plurality opinion); *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). Specifically, in *Miller,* the Supreme Court found that a bank depositor had no "expectation of privacy" in financial information that he had "voluntar-

ily conveyed ... to banks and exposed to their employees in the ordinary course of business." 425 U.S. at 442, 96 S.Ct. at 1623. Further and quite significantly, the *Miller* Court found that a person's expectation that materials in the hands of third parties will be protected from authorities is inconsequential in the analysis. The Court explained:

"[T]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government.... This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, *even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."* 425 U.S. at 443, 96 S.Ct. at 1624 (emphasis added).

In short, the question of whether appellee has a privacy interest in blood that he has relinquished to medical workers is superfluous if the police conduct in obtaining the specimen is not proscribed by the Fourth Amendment.

In the case before us, private, non-governmental parties relinquished a blood specimen to police after they properly secured that specimen from appellee for medical purposes. Where a non-governmental party has "a legitimate independent motivation" for engaging in the challenged conduct, the Fourth Amendment does not apply. See *United States v. Attson,* 900 F.2d 1427, 1433 (9th Cir.1990) (concluding that for the conduct of a party to be subject to the Fourth Amendment that party must have acted with the intent to assist the government in its investigations for administrative purposes and not for an independent purpose). Consequently, evidence obtained by private parties and turned over to the police is not obtained in violation of the Fourth Amendment. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *Attson,* 900 F.2d at 1433 (holding that doctor who drew blood for "purely medical reasons" did not possess

the requisite intent to engage in a search or seizure under the Fourth Amendment).

There is *no* evidence before this Court that police played any role in the initial decision to extract blood from appellee. To the contrary, all evidence conclusively shows that blood was taken by medical personal acting only upon their own initiative. Appellee's attending physician ordered the specimen taken so that he could treat appellee—not for any police investigation. As the plurality correctly concedes:

"In this case the doctor was acting solely as appellee's attending physician when he ordered that the blood be drawn from appellee. The doctor testified that he ordered a blood sample to be taken so that he could get a 'complete blood count.' The State did not request the doctor to take the sample. The doctor wanted the blood only so that he could provide medical treatment for the appellee, not for any governmental purposes. Thus, the doctor was acting on his own initiative and had a legitimate independent motivation for his action. He was not acting as an instrument or agent of the State. Therefore, the fourth Amendment to the United States Constitution and Article 1, Section 19, of the Texas Constitution do not apply to his actions in this case." 818 S.W.2d at 50, citing *United States v. Jacobsen* 466 U.S. 109, 115, 104 S.Ct. 1652 [1657], 80 L.Ed.2d 85 (1984) and *Vargas v. State*, 542 S.W.2d 151, 153 (Tex.Cr.App.1976).

Having decided that the challenged conduct in this case is not covered by the Fourth Amendment, the plurality's analysis should have been complete. The plurality, however, confuses the issues when it equates a "privacy interest" with a right to contest a search or seizure under the Fourth Amendment. The Supreme Court has concluded that an individual possesses a "privacy interest" in his blood for Fourth Amendment purposes, *Schmerber v. California*, 384 U.S. 757, 769, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), but the Court has never intimated that invasion of privacy interests *without governmental action* implicate Fourth Amendment protection.

The issue of whether the police officer's challenged conduct in this case qualifies as conduct covered by the Fourth Amendment should not be muddled with the issue of whether appellee possessed a "reasonable expectation of privacy" in blood that is in possession of medical personnel. See *United States v. Katz*, 389 U.S. 347, 360–361, 88 S.Ct. 507, 516–517, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). That is, if the taking of blood from hospital personnel was not the kind of governmental conduct regulated by the Fourth Amendment, appellee's protected privacy interests under that Amendment could not have been infringed upon. This Court need not reach the issue of whether there exists an expectation of privacy in blood possessed by a third party if we find that there has not been a governmental search of or seizure from appellee. See *United States v. Attson*, 900 F.2d 1427, 1431 (9th Cir.1990).

The plurality opinion simply goes awry when it protects "privacy interests" even though there has been no governmental action in the initial search or seizure.

As to Judge Campbell's concurrence, I simply remind the Court that in *Angel v. State*, 740 S.W.2d 727 (Tex.Cr.App.1987), this Court would not allow the State to raise alternative grounds for upholding the trial court's ruling regarding a motion to suppress certain evidence when the State had not presented such grounds to the Court of Appeals. Specifically, this Court wrote:

"Our State constitution limits this Court's discretionary appellate power to review 'a decision of a Court of Appeals in a criminal case as provided by law.' Tex.Const. art. V, § 5; see also Tex. R.App.Proc. 202(a). Our own rules of procedure further limit our review to those particular grounds raised in the petition and granted by this Court. Tex. R.App.Proc. 202(d)(4); see *McCambridge v. State*, 712 S.W.2d 499, 500 n. 2 (Tex. Cr.App.1986) (discretionary review strictly limited to ground raised and granted in the petition); *Eisenhauer v. State*, 678 S.W.2d 947, 956 (Tex.Cr.App.1984) (Clinton, J. dissenting) ('Our grant of review was no broader than the ground present-

ed. . . .') By doing so, we have narrowed our appellate focus to a particular issue, thus avoiding wholesale review of an entire case. See, e.g., *McCambridge, supra* at 501 n. 1 (issue of voluntariness of consent granted for review). Given these constitutional and procedural restrictions upon our review power, '*our discretionary review is limited to those points of error decided by the Court of Appeals, included in petitions for [discretionary] review is limited to those points of error decided by the courts of appeals, included in petitions for discretionary review and granted as grounds for review.*' " *Angel v. State,* 740 S.W.2d at 729–730. (opinion per Campbell, J.) (emphasis added; brackets in original).

This Court granted the State's petition in this case for one reason only—to determine if there was a Fourth Amendment violation. The concurrence apparently finds that there is no such violation. 818 S.W.2d at 54. The Court of Appeals did not address whether the evidence should have been excluded on State grounds and appellee did not file a cross-petition asking that this Court make that determination. Consequently, the issues discussed in the concurrence are not before us. According to our own rules of appellate procedure, if there are other reasons why the taking of blood from a third party should be excluded from evidence in this case, then the Court of Appeals should be the first to address that question.

Because of the foregoing, I respectfully dissent.