The STATE of Texas, Appellant,

v.

Juan MARTINEZ, Jr., Appellee.

NUMBER 13-15-00592-CR

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed July 13, 2017

Hon. Julie Michele Balovich, Hon. Heather Michelle Rice, for Appellee.

Hon. Edward F. Shaughnessy III, San Antonio, Hon. Jose L. Aliseda, Beeville, for Appellant.

Before Chief Justice Valdez and Justices Longoria and Hinojosa

## OPINION

Opinion by Justice Hinojosa

Appellee Juan Martinez Jr. was indicted for the offense of intoxication manslaughter, a second-degree felony. *See* TEX. PENAL CODE ANN. § 49.08 (West, Westlaw through Ch. 49 2017 R.S.). The State appeals the trial court's order granting Martinez's motion to suppress evidence obtained from the State's warrantless acquisition of Martinez's blood sample.[1] By one issue, the State argues "[t]he trial [c]ourt erred in granting [Martinez's] pre-trial Motion to Suppress" because its ruling is inconsistent with Texas Court of Criminal Appeals precedent, particularly *State v. Huse*, 491 S.W.3d 833 (Tex. Crim. App. 2016). We affirm.

### I. BACKGROUND

The following evidence was adduced at the suppression hearing. Martinez was transported by ambulance to a hospital following his involvement in a traffic accident in Beeville, Texas. A nurse drew Martinez's blood for medical purposes. Martinez subsequently told hospital staff that he did not want them to perform any testing of his blood, and he refused to provide a urine sample. Martinez then removed his I.V. and monitors and left the hospital.

John Richard Quiroga, a Department of Public Safety (DPS) Trooper, went to the hospital to investigate the traffic accident. Officer Quiroga was unable to speak to Martinez who had left the hospital mo-

---

1. This appeal is brought pursuant to Texas Code of Criminal Procedure article 44.01(a)(5), which authorizes the State "to appeal an order of a court in a criminal case if the order ... grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case[.]" TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through Ch. 49 2017 R.S.).

ments before his arrival, but he directed hospital staff to preserve Martinez's blood sample. The following day, Sergeant Daniel J. Keese served a grand jury subpoena on the hospital and obtained four vials of Martinez's blood and his medical records. Sergeant Keese forwarded two of the vials to a DPS crime laboratory for testing.[2]

The trial court granted Martinez's motion to suppress the results of the State's blood analysis and entered written findings of fact and conclusions of law. The trial court concluded in pertinent part that:

1. [T]he seizure of [Martinez's] blood from the Hospital and subsequent search of that blood by the DPS lab constitute a search and seizure within the scope of the Fourth Amendment of the United States Constitution.

2. The initial seizure of [Martinez's] blood from the Hospital by the State using a Grand Jury Subpoena was a valid seizure. However,

3. The *search* of the blood was performed without the necessary search warrant. The blood had been drawn and was no longer subject to mutation or metabolization. Further, the blood was in the possession of the DPS and was not subject to destruction. There were no exigent circumstances to justify a search of the blood without a warrant.

4. The search of the blood and the subsequent blood test results are found to be inadmissible at this time.

(Emphasis in original). This interlocutory appeal followed.

## II. Suppression of Evidence

### A. Standard of Review and Applicable Law

■ The Fourth Amendment protects against unreasonable searches and sei-

zures. U.S. Const. amend. IV; *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2015). Under the privacy theory, a person has standing to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *Ford v. State*, 477 S.W.3d 321, 328 (Tex. Crim. App. 2015) (quoting *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014)).

■ In general, to comply with the Fourth Amendment, a search pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. *Villarreal*, 475 S.W.3d at 795. The purpose underlying the search-warrant requirement is to ensure that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* (quoting *Riley v. California*, — U.S. —, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014)). "Searches conducted without a warrant are per se unreasonable, subject to certain 'jealously and carefully drawn' exceptions." *Ford*, 477 S.W.3d at 328 (quoting *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)).

■ A defendant asserting a motion to suppress bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986)). A

---

2. The results of the State's blood analysis are     not included in the record on appeal.

defendant can satisfy this burden by establishing that a search or seizure occurred without a warrant. *See id.* (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)). The burden then shifts to the State to establish that the warrantless search or seizure was reasonable. *Id.*

■ In reviewing the trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review the ruling in light of the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We will uphold the trial court's ruling if it is correct under any applicable theory of law. *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex. Crim. App. 2011).

**B. Analysis**

■ The State's argument on appeal is as follows:

Since the trial court entered its order suppressing the blood test results in the instant case, the Court Of Criminal Appeals has had the occasion to address both of the assertions relied upon by [Martinez] in support of his motion to suppress the blood testing results.[3] The Court expressly rejected both of those arguments. *State v. Huse*, [491 S.W.3d

833 (Tex. Crim. App. 2016)]. Consequently a *de novo* review by this Court of the lower Court's ruling, reveals that the ruling of that court, granting [Martinez's] motion to suppress, was erroneously entered and should be reversed by this Court. *See State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997).

In reviewing the authority cited by the State, we construe its argument as asserting that no search occurred under the Fourth Amendment because Martinez's blood was drawn by hospital staff, not law enforcement. Martinez responds that a Fourth Amendment violation resulted when the State obtained and later tested Martinez's blood without securing a warrant.

■ Generally, the taking of a blood specimen is a search under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Villarreal*, 475 S.W.3d at 796–97. The court of criminal appeals has identified the three different stages in which a person's expectations of privacy, and corresponding Fourth Amendment protections, might be implicated with regard to blood alcohol test results: (1) the physical intrusion into the body to draw blood, (2) the exercise of control over and the testing of the blood sample, and (3) obtaining the results of the test. *State v. Hardy*, 963 S.W.2d 516, 526 (Tex. Crim. App. 1997). The facts of this case implicate the second stage—obtaining the blood and subsequent testing. The cases relied on by the State implicate only the third stage—obtaining records which reflect the results of the blood test.

In *Hardy*, the court of criminal appeals recognized that when the State itself ex-

---

3. Martinez argued to the trial court, and maintains on appeal, that the evidence should be suppressed because (1) the State did not obtain a warrant for the search of Martinez's blood, and (2) the grand jury subpoena was defective.

tracts blood from a DWI suspect and then conducts the subsequent blood alcohol analysis, two discrete "searches" have occurred for Fourth Amendment purposes. 963 S.W.2d at 523–24. The defendant in *Hardy* was taken to a hospital following a traffic accident, where his blood was drawn and analyzed by hospital personnel for medical purposes. *Id.* at 517–18. A state trooper later obtained a grand jury subpoena for medical records which reflected that the defendant's blood alcohol content was above the legal limit. *Id.* at 518. The court noted that obtaining medical records of privately conducted blood extraction and analysis is much less invasive than either the extraction or the chemical analysis themselves. *Id.* at 527. The court concluded that "whatever interests society may have in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of blood-alcohol test results taken by hospital personnel solely for medical purposes after a traffic accident." *Id.*

In *Huse*, the court of criminal appeals revisited its earlier decision in light of the subsequent passage of the Health Insurance Portability and Accountability Act of 1996 (HIPPAA). 491 S.W.3d at 841-42. The court concluded that HIPAA "actually serves to bolster our [earlier] holding[,]" explaining as follows:

> While codifying a broad requirement of patient confidentiality in medical records, HIPAA nonetheless provides specific exceptions in which the disclosure of otherwise protected health care information is permitted. Section 164.512(f)(1)(ii)(B) of Title 45 of the Code of Federal Regulations, for example, allows for the disclosure of "protected health information" when to do so is "[i]n compliance with and as limited by the relevant requirements of ... [a] grand jury subpoena[.]" Under this provision, a DWI offender would have no legitimate expectation of privacy sufficient to block a health care provider from disclosing otherwise protected health care information when required to do so under the terms of a grand jury subpoena.

*Id.* at 842 (internal citations and footnotes omitted).

We disagree with the State that *Huse* and *Hardy* are controlling. Unlike those cases, the State did not just seek Martinez's medical records, but also obtained Martinez's blood sample and then conducted its own analysis of the sample. Martinez's blood was never analyzed by hospital staff for medical purposes, and his medical records contained no information concerning his blood alcohol content.

The facts in this case are similar to those before the court of criminal appeals in *State v. Comeaux*, 818 S.W.2d 46 (Tex. Crim. App. 1991) (plurality op.). In *Comeaux*, the defendant was taken to the hospital following a traffic accident where his blood was drawn for medical purposes. *Id.* at 48–49. The investigating officer presented the nurse on duty with a form entitled "Statutory Authorization: Mandatory Blood Specimen," and she provided the officer with a sample of defendant's blood. *Id.* The State later conducted its own analysis of the blood sample, which the defendant moved to suppress. *Id.* at 48.

The *Comeaux* plurality framed the issue presented as follows: "[W]hether an accused, after voluntarily giving a sample of his blood to a third party, maintains a legitimate expectation of privacy in that sample sufficient to allow him to object to what the third party does with the blood sample thereafter." *Id.* at 51. The plurality noted that, "a person does not assume that, by giving a sample of blood for private testing, that blood sample could then

be submitted to the State, or to any other person or entity, for a purpose other than that for which it was given." *Id.* at 52. The plurality concluded that the defendant had a legitimate expectation of privacy in the blood sample given for medical purposes. *Id.* at 51, 53. The plurality observed that there were no exigent circumstances nor was there probable cause that would justify the warrantless search of the defendant's blood. *Id.* at 53. Therefore, the plurality held that the defendant's Fourth Amendment rights were violated and that the blood alcohol content analysis conducted by the State had to be suppressed. *Id.*

The court of criminal appeals has since observed that "[b]ecause *Comeaux* is only a plurality opinion, it is not binding precedent." *Hardy*, 963 S.W.2d at 519. Nevertheless, the court noted the opinion's "persuasive value." *Id.* Likewise, we find *Comeaux* persuasive. Martinez does not complain of the taking of his blood by hospital personnel, nor could he. "[T]he Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on [its] own initiative[.]" *Huse*, 491 S.W.3d at 840 (quoting *Skinner v. Railway Labor Exec. Assn.*, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). However, the subsequent acquisition of Martinez's blood sample and later testing by law enforcement constitute a search by the State implicating Fourth Amendment protections. *See Comeaux*, 818 S.W.2d at 51–53; *Huse*, 491 S.W.3d at 840 (recognizing that blood alcohol analysis conducted by the State is a discrete search); *see also People v. Perlos*, 436 Mich. 305, 462 N.W.2d 310, 320 (1990) (noting that the Fourth Amendment does not permit the warrantless acquisition

of a suspect's blood sample taken for medical purposes for discretionary testing). Accordingly, it was the State's burden to establish that the warrantless search was reasonable by presenting evidence in support of an established exception to the warrant requirement. *See Villarreal*, 475 S.W.3d at 796; *Ford*, 158 S.W.3d at 492. The State neither argues on appeal, nor did it present evidence to the trial court, concerning any justification for a warrantless search.[4] Therefore, conducting a de novo review of the trial court's application of the law, we hold that the warrantless search of Martinez's blood sample violated the Fourth Amendment. *See Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349; *Comeaux*, 818 S.W.2d at 53. We overrule the State's sole issue.

### III. Conclusion

We affirm the trial court's suppression ruling.

---

4. Although not challenged by the State, we note the trial court concluded there were no exigent circumstances that would justify the warrantless search. *See Missouri v. McNeely,* 569 U.S. 141, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) (recognizing exigent circumstances as a well-recognized exception to the warrant requirement).